(123 P.3d 740)
No. 93,762

WILLIE McINTOSH, *Appellant,* v. SEDGWICK COUNTY, *Appellee.*

Opinion filed December 9, 2005.

*John L. Carmichael* and *Steven R. Wilson*, of Wilson, Lee, Gurney, Carmichael & Hess, of Wichita, for appellant.

*Richard J. Liby* and *Robert G. Martin*, of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, for appellee.

Before MCANANY, P.J., GREEN and MARQUARDT, JJ.

GREEN, J.: This case concerns the calculation of workers compensation benefits for a permanent total disability when there has been an offset for retirement benefits under K.S.A. 44-501(h). Willie McIntosh appeals the decision of the Workers Compensation Board (Board) which not only reduced his weekly workers compensation amount by his applicable weekly retirement benefits but also reduced the $125,000 statutory cap on an employer's liability for permanent total disability benefits under K.S.A. 44-510f(a)(1). This award effectively limited the number of weeks that McIntosh could receive workers compensation.

On appeal, McIntosh argues that K.S.A. 44-501(h) reduces the weekly compensation rate by the amount of the offset for retirement benefits but does not limit the number of weeks payable for permanent total disability compensation. We agree. In construing K.S.A. 44-510c(a)(1) and K.S.A. 44-510f(a)(1), we determine that the legislature intended for permanent total disability payments to continue until the employee no longer suffers from such disability or until the $125,000 statutory cap on an employer's liability is reached, whichever event occurs first. There is no indication that the legislature intended for the workers compensation offset under K.S.A. 44-501(h) to reduce the $125,000 cap on an employer's liability for permanent total disability payments, thereby limiting the number of weeks that permanent total disability benefits are payable. Because the Board's decision terminated McIntosh's workers compensation benefits after 341 weeks and before the $125,000 statutory cap on the employer's liability would have been met, we hold that the award was improper. Accordingly, we reverse and remand with directions that the payments ordered by the Board shall continue until McIntosh's permanent total disability has ended or until the $125,000 maximum allowable payment for

permanent total disability has been exhausted, whichever event occurs first.

On June 25, 1999, McIntosh sustained injuries while working as a security officer for Sedgwick County (County). McIntosh filed a workers compensation claim, and in January 2003 the administrative law judge (ALJ) found McIntosh to be permanently and totally disabled. Regarding the weekly workers compensation benefits payable to McIntosh, the parties agreed that the County was entitled to an offset of $39.26 per week under K.S.A. 44-501(h) for McIntosh's retirement benefits from the Kansas Public Employees' Retirement System (KPERS). The parties, however, could not agree on whether the County was entitled to an offset under K.S.A. 44-501(h) for McIntosh's social security retirement benefits. The ALJ determined that the County was not entitled to an offset for McIntosh's social security retirement benefits.

The Board affirmed the ALJ's award and determined that the County was not entitled to a social security retirement credit or offset under K.S.A. 44-501(h). On appeal, this court reversed the Board's decision and remanded the case, determining that K.S.A. 44-501(h) applied to McIntosh's case and that the County was entitled to an offset for the social security retirement benefits in *McIntosh v. Sedgwick County*, 32 Kan. App. 2d 889, 91 P.3d 545, *rev. denied* 278 Kan. 846 (2004).

On remand, the Board calculated the offset under K.S.A. 44-501(h) for McIntosh's retirement benefits and also set forth the total amount of workers compensation benefits payable to McIntosh. In doing so, the Board indicated that a permanent total disability pays a maximum benefit of $125,000 at a weekly compensation rate based on the calculation under K.S.A. 44-510c. The Board noted that unlike compensation for a permanent partial disability, a permanent total disability award has no limitation on the number of disability weeks; instead, there is only the statutory limit of $125,000.

The Board then calculated the number of weeks that benefits would be payable to McIntosh without the offset for retirement benefits by taking the $125,000 maximum benefit amount and dividing by McIntosh's weekly compensation rate of $366. This cal-

culation equaled 341.53 weeks. The Board stated that "[t]o cal-culate the retirement reduction in any other manner would effectively dilute or eliminate the offset." The Board then reduced McIntosh's weekly workers compensation benefits for those 341.53 weeks by the applicable social security retirement benefits amount. In addition, the Board reduced McIntosh's weekly workers com-pensation benefits payable from August 1999 forward by McIn-tosh's KPERS weekly retirement benefits of $39.26. The award entered by the Board resulted in a total benefits amount of $30,847.74 paid to McIntosh over the course of 341.53 weeks. The $30,847.74 award represented the $125,000 maximum benefit amount under K.S.A. 44-510f(a)(1) minus the reductions for Mc-Intosh's social security and KPERS retirement benefits over the course of 341.53 weeks.

Although this award was approved by the majority of the Board members deciding McIntosh's claim, one Board member dis-sented. The dissenting Board member stated:

"The undersigned Board Member respectfully dissents from the method the majority employs to calculate this permanent total disability award. I agree with the majority that the retirement offset provisions in K.S.A. 1998 Supp. 44-501(h) are intended to and do reduce the amount of the weekly disability compensation. I disagree, however, that this weekly reduction likewise reduces the total dollar amount of permanent total disability compensation that is payable. Permanent total disability compensation, unlike permanent partial disability compensation, is subject only to a dollar limit, not to any time limit or fixed number of weeks. [See K.S.A. 44-510c and K.S.A. 44-510e.] 'The payment of compensation for perma-nent total disability shall continue for the duration of such disability . . . .' [K.S.A. 44-510c(a)(1).] As such, the weekly compensation in this case should con-tinue, albeit at the reduced weekly rate, until the $125,000 maximum has been paid. [K.S.A. 44-510f(a)(1).] I would not, as the majority has done, reduce both the amount of the weekly compensation and the $125,000 maximum by the amount of the retirement offset. Permanent total disability compensation is in-tended to be wage replacement. The purpose of the retirement offset is to avoid duplication of those benefits. [*McIntosh*, 32 Kan. App. 2d 889.] This purpose is served by reducing the amount of the weekly benefit. It is not served by also reducing the number of weeks those weekly benefits are payable."

McIntosh now appeals from the Board's decision. McIntosh con-tends that the Board's decision goes beyond the mandate of K.S.A. 44-501(h) to eliminate wage-loss duplication and also entirely elim-

inates his workers compensation benefits after the 341st week. Mc-Intosh argues that although K.S.A. 44-501(h) operates to reduce his weekly workers compensation payment by the retirement benefits offset, it does not limit the number of weeks for permanent total disability compensation.

Our review of the Board's decision requires interpretation of various statutory provisions under the Workers Compensation Act (Act), K.S.A. 44-501 *et seq.* The interpretation of statutory provisions in the Act presents a question of law. Under the doctrine of operative construction, the Board's interpretation of the workers compensation laws is entitled to judicial deference. If there is a rational basis for the Board's interpretation, it should be upheld upon judicial review. However, the Board's determination on questions of law is not conclusive and, though persuasive, is not binding on the court. The party challenging the Board's interpretation bears the burden of proving its invalidity. *Foos v. Terminix*, 277 Kan. 687, 692-93, 89 P.3d 546 (2004). "Although we give deference to the Board's interpretation of the governing statute, erroneous interpretation or application of the statute justifies appellate relief. [Citation omitted.]" *Evans v. Frakes Trucking*, 31 Kan. App. 2d 211, 214, 64 P.3d 440 (2002).

In interpreting the statutory provisions relevant to this case, we bear in mind that the fundamental rule of statutory construction to which all other rules are subordinate is that the legislature's intent governs when such intent can be ascertained. *Foos*, 277 Kan. at 695. If a statute is plain and unambiguous, the court must give effect to the legislature's intent as expressed rather than determine what the law should or should not be. *Pierren-Abbott v. Kansas Dept. of Revenue*, 279 Kan. 83, 88, 106 P.3d 492 (2005). "Where the face of the statute leaves its construction uncertain, the court may look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested." *Robinett v. The Haskell Co.*, 270 Kan. 95, 100-01, 12 P.3d 411 (2000).

Moreover, when several statutes must be construed together, an appellate court must apply the following principles:

"In construing statutes and determining legislative intent, several provisions of an act or acts, *in pari materia*, must be construed together with a view of reconciling and bringing them into workable harmony if possible. Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible. The court must give effect to the legislature's intent even though words, phrases, or clauses at some place in the statute must be omitted or inserted." *State ex rel. Morrison v. Oshman Sporting Goods Co. Kansas*, 275 Kan. 763, Syl. ¶ 2, 69 P.3d 1087 (2003).

Turning now to the statutes involved in this case, we first look at K.S.A. 44-501(h), which deals directly with the workers compensation offset for an employee's retirement benefits. K.S.A. 44-501(h) states:

"If the employee is receiving retirement benefits under the federal social security act or retirement benefits from any other retirement system, program or plan which is provided by the employer against which the claim is being made, any compensation benefit payments which the employee is eligible to receive under the workers compensation act for such claim shall be reduced by the weekly equivalent amount of the total amount of all such retirement benefits, less any portion of any such retirement benefit, other than retirement benefits under the federal social security act, that is attributable to payments or contributions made by the employee, but in no event shall the workers compensation benefit be less than the workers compensation benefit payable for the employee's percentage of functional impairment."

The purpose of the workers compensation benefit offset under K.S.A. 44-501(h) is to prevent wage-loss duplication. See *Wishon v. Cossman*, 268 Kan. 99, 107, 991 P.2d 415 (1999); *Dickens v. Pizza Co.*, 266 Kan. 1066, 1070-71, 974 P.2d 601 (1999). Recognizing that an employee experiences only one wage loss and should receive only one wage-loss benefit, the author of 9 Larson's Workers' Compensation Law § 157.01 (2000), discusses the impropriety of duplicate wage-loss benefits as follows:

"Wage-loss legislation is designed to restore to the worker a portion, such as one-half to two-thirds, of wages lost due to the three major causes of wage-loss: physical disability, economic unemployment, and old age. The crucial operative fact is that of wage loss; the cause of the wage loss merely dictates the category of legislation applicable. Now if a worker undergoes a period of wage loss due to all three conditions, it does not follow that he or she should receive three sets of benefits simultaneously and thereby recover more than his or her actual wage. The worker is experiencing only one wage loss and, in any logical system, should

receive only one wage-loss benefit. This conclusion is inevitable, once it is recognized that workers' compensation, unemployment compensation, nonoccupational sickness and disability insurance, and old age and survivors' insurance are all parts of a system based upon a common principle. If this is denied, then all coordination becomes impossible and social legislation becomes a grab-bag of assorted unrelated benefits."

K.S.A. 44-501(h) is designed to prevent against wage-loss duplication by reducing the amount of workers compensation benefit payments by the amount of the employee's weekly equivalent amount of retirement benefits. Retirement benefits, other than federal social security retirement benefits, which can be attributed to the employee's contributions do not reduce the workers compensation payments. See K.S.A. 44-501(h).

In this appeal, McIntosh does not contest that the County is entitled to an offset under K.S.A. 44-501(h). Rather, McIntosh challenges the Board's decision to limit the number of weeks for permanent total disability payments before the $125,000 statutory cap under K.S.A. 44-510f(a)(1) has been reached. McIntosh maintains that the Board's decision cutting off his workers compensation benefits after 341 weeks forfeits over $94,000 in potential permanent total disability benefits.

As McIntosh points out in his brief, there is no time limitation on workers compensation payments for a permanent total disability. Rather, K.S.A. 44-510c(a)(1) expressly states that "[t]he payment of compensation for permanent total disability shall continue for the duration of such disability." The clear intention of the legislature, as expressed in the plain language of K.S.A. 44-510c(a)(1), is to allow the payment of workers compensation benefits for a permanent total disability to continue for as long as the employee remains permanently and totally disabled. The Act, however, limits the maximum allowable benefit for permanent total disability to $125,000 in K.S.A. 44-510f, which we will discuss later.

Previously, the Act imposed time limitations on workers compensation payments for a permanent total disability. See K.S.A. 44-510(3)(a) (Corrick 1964) (payment for permanent total disability shall not extend over period exceeding 8 years from date of injury); K.S.A. 44-510c(a) (Weeks 1973) (payment for permanent total dis-

ability shall not extend over period exceeding 415 weeks from date of injury). Nevertheless, in 1974, K.S.A. 44-510c was amended to include the current language which requires that the payment of compensation for permanent total disability continue for the length of the disability. See L. 1974, ch. 203, sec. 12. " 'When the legislature revises an existing law, it is presumed that the legislature intended to change the law as it existed prior to the amendment. [Citation omitted.]' " *State v. Gordon*, 275 Kan. 393, 405, 66 P.3d 903 (2003). The 1974 amendment further evidences the legislature's intent to not impose a time limitation on permanent total disability payments.

The legislature, however, has imposed a cap of $125,000 on an employer's liability for permanent total disability compensation. See K.S.A. 44-510f(a)(1). The relevant portion of K.S.A. 44-510f states:

"(a) Notwithstanding any provision of the workers compensation act to the contrary, the maximum compensation benefits payable by an employer shall not exceed the following:

(1) For permanent total disability, including temporary total, temporary partial, permanent partial and temporary partial disability payments paid or due, $125,000 for an injury or any aggravation thereof."

When construing K.S.A. 44-510c(a)(1) and K.S.A. 44-510f(a)(1) together, we find it readily apparent that the legislature intended that workers compensation payments for a permanent total disability continue until the employee no longer is permanently and totally disabled or until the $125,000 maximum limit has been paid, whichever event occurs first. Here, the Board's decision did not provide for McIntosh's permanent total disability payments to continue for the length of his disability or until the $125,000 cap had been reached under K.S.A. 44-510f(a)(1). Rather, the Board terminated McIntosh's permanent total disability benefits after 341 weeks when only $30,847.74 would have been paid. Such a decision does not conform to the requirements of K.S.A. 44-510c(a)(1) and K.S.A. 44-510f(a)(1).

The Board reasoned that calculating a reduction for retirement benefits in any other way would effectively dilute or eliminate the workers compensation offset under K.S.A. 44-501(h). Neverthe-

less, the plain language of K.S.A. 44-501(h) provides for a reduction in "any compensation benefit payments" received by the employee under the Act. There is no language limiting the employer's statutory liability cap under K.S.A. 44-510f(a)(1) by the amount of the 44-501(h) offset. As pointed out by the dissenting Board member, the purpose of workers compensation for permanent total disability is wage replacement. Moreover, as discussed previously, the purpose of the workers compensation benefit offset under K.S.A. 44-501(h) is to prevent against wage-loss duplication. See *McIntosh*, 32 Kan. App. 2d 889, Syl. ¶ 1. Both of these purposes can be accomplished by reducing the weekly workers compensation payments for the duration of the disability.

A duplication of wage-loss benefits does not occur when workers compensation payments continue for the duration of a permanent total disability or until the $125,000 cap on an employer's liability is met under K.S.A. 44-510f(a)(1). Rather, under such circumstances, weekly workers compensation payments have the appropriate reduction for social security and other retirement benefits. Therefore, an employee would never be receiving more in weekly benefits than the employee's workers compensation payments would have been without the offset under K.S.A. 44-501(h).

Nevertheless, the County maintains that the Board's application of the workers compensation offset under K.S.A. 44-501(h) is the only way to carry out the legislature's intent and prevent duplication of benefits. The County contends that the Board's method applies the offset for retirement benefits equally to all injured workers, whether permanently and totally disabled or permanently and partially disabled, by taking the same percentage reduction for all workers.

In addressing the County's argument, we point out that employees suffering a permanent total disability are treated differently under the Act than employees who have a permanent partial disability. Workers compensation benefits for a permanent partial scheduled disability are paid for a set number of weeks as determined under K.S.A. 44-510d. Workers compensation benefits for a permanent partial disability are paid based on the formula set forth in K.S.A. 44-510e and such payments shall not exceed 415

weeks. See K.S.A. 44-510e(a). An employer's liability for permanent partial disability benefits is subject to a $100,000 cap and to a $50,000 cap when only functional impairment is awarded. K.S.A. 44-510f(a)(3) and (4). Thus, workers compensation benefits for a permanent partial disability are limited to a certain period of time subject to the statutory cap on an employer's liability. On the other hand, workers compensation payments for a permanent total disability continue for the length of the disability or until the $125,000 cap has been met, whichever event occurs first.

The workers compensation offset under K.S.A. 44-501(h) eliminates wage-loss duplication by reducing the weekly payments for both permanent total and permanent partial disabilities. In the case of a permanent partial disability, the end result of the offset is to reduce the total award as there is a time limitation for permanent partial disability payments. The payments continue until the maximum number of weeks have been reached. On the other hand, because there is no time limitation on payments for permanent total disability, the end result of the offset under K.S.A. 44-501(h) is to delay the amount of time it takes to reach the $125,000 statutory cap on an employer's liability.

The legislature clearly intended to impose different limitations on workers compensation benefits for permanent total and permanent partial disabilities. For a permanent total disability, the legislature intended for workers compensation payments to continue for the duration of the disability subject only to the $125,000 cap on an employer's liability. Stated another way, as long as the employee continues to suffer permanent total disability, the employee should continue to receive workers compensation payments until $125,000 has been paid. Because the award entered by the Board failed to provide for McIntosh's workers compensation payments to continue for the length of his permanent total disability or until the $125,000 cap on the employer's liability for a permanent total disability has been reached, the Board's decision did not follow the intent of the legislature.

In summary, we determine that the workers compensation offset under K.S.A. 44-501(h) operates to reduce the weekly workers compensation payments for a permanent total disability. Never-

theless, workers compensation payments for a permanent total disability continue until such disability has ended or until the $125,000 cap on an employer's liability for a permanent total disability has been reached, whichever event occurs first.

Reversed and remanded with directions.