154 P.3d 1130 (2007)
David A. LLERAS, Appellee,
v.
VIA CHRISTI REGIONAL MEDICAL CENTER and LIBERTY MUTUAL FIRE INSURANCE COMPANY, Appellants.
No. 95,901.
Court of Appeals of Kansas.
April 6, 2007.
Stephen Kerwick and Eric K. Kuhn, of Foulston Siefkin LLP, of Wichita, for the appellants.
John L. Carmichael and Steven R. Wilson, of Wilson, Lee, Gurney, Carmichael & Hess, of Wichita, for the appellee.
Before MARQUARDT, P.J., PIERRON, J., and KNUDSON, S.J.
PIERRON, J.
Via Christi Regional Medical Center and Liberty Mutual Fire Insurance Company, (collectively Via Christi) appeal a workers compensation award in favor of David A. Lleras in light of Lleras' one-time lump sum distribution of retirement benefits. Via Christi argues the Workers Compensation Board (Board) erred in determining the proper offset amount by allowing Lleras' retirement benefits to be apportioned over his remaining life expectancy. We affirm.
The facts in this case are not disputed by the parties, and the single issue of law facing the court is a determination of how the offset provision of K.S.A. 44-510(h) in the workers *1132 compensation act applies to a one-time lump sum payment of retirement benefits. The factual findings of the Board were as follows:
"The facts are not in dispute. The parties agree that on November 4, 2003, claimant settled his claim with respondent for an April 29, 2003, low back injury. That settlement entitled claimant to receive permanent partial general disability benefits under K.S.A. 44-510e for a five percent whole person functional impairment. Within days of the settlement hearing, on November 7, 2003, respondent eliminated claimant's position and terminated him.
"The settlement agreement reserved claimant's right to seek review and modification of his workers compensation award. The parties agree that claimant's settlement award should be modified to increase claimant's permanent partial general disability to 38 percent commencing November 7, 2003, when he was terminated.
"The parties also agree that on February 1, 2004, claimant was paid a lump sum retirement benefit of $52,999.21, which netted claimant the sum of $42,399.37 after taxes. The parties agree the retirement benefit was fully funded by respondent.
. . . .
"At the review and modification hearing, claimant introduced a mortality table from the Pattern Instructions Kansas 3d. Claimant testified he was born on December 25, 1953, and the records of Dr. Philip R. Mills that were introduced into the record indicate claimant is Hispanic.
"The Board is persuaded by claimant's argument that claimant's retirement benefits were intended to last him a lifetime. Consequently, the lump sum should be converted to a weekly equivalent amount by dividing the lump sum amount by claimant's estimated life expectancy. Claimant was 50 years old in February 2004 when he received the lump sum retirement benefit. Accordingly, claimant's estimated life expectancy at the time he received payment was approximately 28 years, or 1,456 weeks.
"The Board concludes the gross sum of the retirement benefits, or $52,999.21, should be divided by 1,456 weeks, which yields a weekly credit of $36.40. Therefore, the Board affirms the Judge's finding that claimant's permanent partial general disability should be increased from five percent to 38 percent as of November 7, 2003, when he was terminated by respondent. Moreover, the Board affirms the Judge's finding that commencing February 1, 2004, respondent and its insurance carrier are entitled to receive a retirement credit under K.S.A. 44-501(h) in the sum of $36.40 per week for the retirement benefits if disbursed to claimant in a lump sum."
Via Christi appeals the ruling.
Via Christi argues the Board erred in applying the offset provision in K.S.A. 44-501(h) to Lleras' disability award. This case involves pure statutory interpretation. The interpretation of a statute is a question of law over which this court has unlimited review. See Foster v. Kansas Dept. of Revenue, 281 Kan. 368, 374, 130 P.3d 560 (2006).
Special rules apply, however, when considering whether an administrative agency erroneously interpreted or applied the law:
"The interpretation of a statute by an administrative agency charged with the responsibility of enforcing that statute is entitled to judicial deference. This deference is sometimes called the doctrine of operative construction. . . . [I]f there is a rational basis for the agency's interpretation, it should be upheld on judicial review. . . . [However,] [t]he determination of an administrative body as to questions of law is not conclusive and, while persuasive, is not binding on the courts." State Dept. of SRS v. Public Employee Relations Board, 249 Kan. 163, 166, 815 P.2d 66 (1991).
See K.S.A. 77-621(c)(4).
Lleras also argues the lack of Kansas precedent involving a similar factual scenario and the uniqueness of the offset language in K.S.A. 44-501(h) compared with jurisdictions makes operative construction even more persuasive.
K.S.A. 44-501(h) provides:

*1133 "If the employee is receiving retirement benefits under the federal social security act or retirement benefits from any other retirement system, program or plan which is provided by the employer against which the claim is being made, any compensation benefit payments which the employee is eligible to receive under the workers compensation act for such claim shall be reduced by the weekly equivalent amount of the total amount of all such retirement benefits, less any portion of any such retirement benefit, other than retirement benefits under the federal social security act, that is attributable to payments or contributions made by the employee, but in no event shall the workers compensation benefit be less than the workers compensation benefit payable for the employee's percentage of functional impairment."
The court in McIntosh v. Sedgwick County, 34 Kan.App.2d 684, 123 P.3d 740, aff'd 282 Kan. 636, 147 P.3d 869 (2006), recently provided a helpful look into the legislative intent and policy behind the offset provision in K.S.A. 44-501(h).
"`The purpose of the workers compensation benefit offset under K.S.A. 44-501(h) is to prevent wage-loss duplication. See Wishon v. Cossman, 268 Kan. 99, 107, 991 P.2d 415 (1999); Dickens v. Pizza Co., 266 Kan. 1066, 1070-71, 974 P.2d 601 (1999). Recognizing that an employee experiences only one wage loss and should receive only one wage-loss benefit, the author of 9 Larson's Workers' Compensation Law § 157.01 (2002), discusses the impropriety of duplicate wage-loss benefits as follows:
`Wage-loss legislation is designed to restore to the worker a portion, such as one-half to two-thirds, of wages lost due to the three major causes of wage-loss: physical disability, economic unemployment, and old age. The crucial operative fact is that of wage loss; the cause of the wage loss merely dictates the category of legislation applicable. Now if a worker undergoes a period of wage loss due to all three conditions, it does not follow that he or she should receive three sets of benefits simultaneously and thereby recover more than his or her actual wage. The worker is experiencing only one wage loss and, in any logical system, should receive only one wage-loss benefit. This conclusion is inevitable, once it is recognized that workers' compensation, unemployment compensation, nonoccupational sickness and disability insurance, and old age and survivors' insurance are all parts of a system based upon a common principle. If this is denied, then all coordination becomes impossible and social legislation becomes a grab-bag of assorted unrelated benefits.'
"K.S.A. 44-501(h) is designed to prevent against wage-loss duplication by reducing the amount of workers compensation benefit payments by the amount of the employee's weekly equivalent amount of retirement benefits. Retirement benefits, other than federal social security retirement benefits, which can be attributed to the employee's contributions do not reduce the workers compensation payments. See K.S.A. 44-501(h)." 34 Kan.App.2d at 689-90, 123 P.3d 740.
The offset provision has worked relatively smoothly in many situations under the statute. In McIntosh v. Sedgwick County, 282 Kan. 636, 147 P.3d 869 (2006), the court offset the weekly award by the weekly payments McIntosh received from his social security and state retirement benefits. In Wishon v. Cossman, 268 Kan. 99, Syl ¶ 5, 991 P.2d 415 (1999), the court held that where an injured worker is receiving a workers compensation award and also social security disability payments which are converted to social security retirement benefits because the recipient has reached age 65, the workers compensation award is subject to the K.S.A. 44-501(h) offset provision.
In Dickens v. Pizza Co., 266 Kan. 1066, 1070-71, 974 P.2d 601 (1999), Dickens was already receiving retirement benefits. He delivered pizzas to supplement those benefits when he was injured. The Dickens court held that his compensation award was to replace the second wage loss and was not a duplication of the retirement benefits he was already receiving. 266 Kan. at 1071, 974 P.2d 601. In Green v. City of Wichita, 26 *1134 Kan.App.2d 53, 977 P.2d 283, rev. denied 267 Kan. 888 (1999), the question was whether an employee's disability payments from a city-based retirement system constituted "retirement payments" under K.S.A. 44-501(h) and were thus subject to offset. The Green court held they were not. 26 Kan. App 2d at 55-57, 977 P.2d 283.
In Injured Workers of Kansas v. Franklin, 262 Kan. 840, 942 P.2d 591 (1997), the court upheld the constitutionality of K.S.A. 44-501(h):
"Subsection (h) allows an offset against workers compensation benefits to which an injured worker would otherwise be entitled for each dollar of social security retirement benefits received by the injured worker, as long as the workers compensation benefits do not dip below the workers compensation benefits payable for the employee's percentage of functional impairment." 262 Kan. at 865, 942 P.2d 591.
Lleras argues there are four possible ways to interpret the K.S.A. 44-501(h) offset provision in this case: (1) No credit since after a lump sum distribution the claimant is no longer "receiving" retirement benefits; (2) Prorata credit for the year of receipt of a lump sum distribution; (3) Prorata credit based on the number of weeks remaining on the award; and (4) Prorata credit based on the claimant's remaining life expectancy at the time of the distribution.
Via Christi counters that some of the points argued by Lleras are not properly on appeal due to the lack of a cross-appeal. K.S.A. 60-2103(h) requires an appellee to file a notice of cross-appeal from adverse rulings in order to obtain appellate review of those issues. See Mid-Continent Specialists, Inc. v. Capital Homes, 279 Kan. 178, 191-92, 106 P.3d 483 (2005). Via Christi contends, based on the award granted by the Board, it is improper for Lleras to request a remedy: (1) no offset should be given at all since he is no longer receiving retirement benefits or (2) because the Board found the offset provision applies, the offset credit should be based on the net, after tax and after penalty, pension actually received, rather than the pre-tax/ pre-penalty balance in the pension fund. We agree that these two issues are not properly before this court and our discussion is limited to the issues raised by Via Christi.
Via Christi argues the administrative law judge and the Board improperly applied a hypothetical set of facts of retirement monies normally paid out in monthly payments upon retirement, instead of facing the reality that Lleras freely chose to have his retirement benefits paid out in one lump sum to obtain the present value of his retirement. Via Christi argues the Board's decision is illogical and inconsistent because all of Lleras' retirement money is available now and it would have had more value and more favorable tax treatment if held until proper retirement. Via Christi argues that if the Board is going to use a hypothetical, it should at least use an accurate one and not choose the result that provides the smallest offset and largest net recovery for Lleras.
Via Christi cites a previous decision of the Board as persuasive value to help in the court's determination. In Odle v. Cramer, Inc., Docket No. 206,313, filed October 1998, the claimant had a 50 percent work disability and the Board offset amounts for the claimant's social security benefits and retirement benefits in the following manner:
"K.S.A. 44-501(h) provides for such an offset when the claimant is receiving retirement benefits under the federal social security act and/or where a plan is provided by the employer. Claimant testified that she began drawing social security retirement benefits when she turned 62 years of age on March 14, 1996, at the rate of $842 per month. This equates to a weekly benefit of $194.31. Claimant's weekly permanent disability compensation should be reduced by this amount beginning with the week the social security benefits commenced.
"Respondent is also entitled to a reduction for the retirement benefits it provided claimant. Respondent's human resources coordinator, Linda Collins, testified that the pension was totally provided by respondent. There is no evidence to the contrary. Thus, the record establishes that all of the $7,700 retirement benefit claimant rolled over into an IRA was attributable *1135 to payments or contributions made by the employer. The maximum number of weeks of permanent total disability benefits that can be awarded is 383.44. This is determined by dividing the weekly compensation rate of $326 into the $125,000 maximum compensation benefit for a permanent total disability award. Dividing 383.44 into $7,700 results is a weekly credit of $20.08. This is the amount by which all weekly compensation benefits will be reduced for the employer provided pension benefits."
Lleras argues Via Christi's reliance on the Board's prior decision in Odle is unreasonable. Lleras argues Odle did not involve a harsh result after application of the offset for a retirement benefit of only $7,700. However, applying Odle to the present case where the retirement benefit is close to $50,000 demonstrates an extremely harsh result if the retirement offset is applied at a pro rata amount over the remaining weeks of a claimant's work disability payments as opposed to claimant's life expectancy. Lleras argues applying the offset for the remaining weeks of a claimant's work disability creates a windfall for Via Christi by allowing it to avoid responsibility to compensate an injured worker for his or her work disability by using the worker's pension to offset the workers compensation benefits. At the end of the payments, the claimant is destitute and not able to fall back on either the workers compensation benefits or a pension. Lleras contends this type of system will allow employers such as Via Christi to lay off long-time employees who become injured and require them to withdraw their retirement funds in a lump sum regardless of their age or their intent to retire from the workforce, as those funds could reduce the amount of permanent disability benefits that must be paid. Lleras argues surely it was not the legislature's intention to force workers to cash their pension plan as a result of the employer's failure to pay workers compensation benefits and then deduct that lump sum payment from the employer's obligation to compensate the worker for his or her injury.
Under the doctrine of operative construction, we find there is a rational basis for the agency's interpretation of the offset provision in K.S.A. 44-501(h) and its application to Lleras' award of work disability for permanent partial general disability. We start with the premise as outlined in McIntosh that the legislature's intent in adopting K.S.A. 44-501(h) was to prevent wage-loss duplication by allowing employers to offset retirement benefits. Lleras' award should be reduced by the amount of the retirement benefits he received. The question is what is the proper time period for the offset. The Board applied a rational interpretation of K.S.A. 44-501(h) in allowing Lleras' retirement benefits to be apportioned over his remaining life expectancy.
The court in McIntosh stated, "K.S.A. 44-501(h) is designed to prevent against wage-loss duplication by reducing the amount of workers compensation benefit payments by the amount of the employee's weekly equivalent amount of retirement benefits." 34 Kan. App.2d at 690, 123 P.3d 740. K.S.A. 44-501(h) does not state that the employee's work disability is reduced simply by the weekly benefit of the employee's retirement benefits. Rather, the statute expressly states the work disability benefit is "reduced by the weekly equivalent amount of the total amount of all such retirement benefits." The Board properly concluded that even though Lleras received a lump-sum payout of his retirement benefits, the lump-sum does not prevent the Board from determining what the "weekly equivalent amount" of the retirement benefits would have been. Lleras' retirement benefits were intended to apply for the remainder of his lifetime and the Board's determination of his life expectancy in computing the "weekly equivalent amount" was proper. Lleras' retirement, even if done early, does not end simply because he chose to receive his benefits in a one-time lump sum payout. The Board properly used the mortality table from the Pattern Instructions Kansas Civ.3d 171.45 in arriving at the offset amount.
Although the Board's prior decisions set no precedent and stand simply for persuasive value, the Board's decision in Odle provides a more realistic fact scenario of what might occur with an employee's pension upon layoff *1136 or termination. The employee would most likely roll the pension over into an IRA-type financial vehicle in order to avoid substantial penalties, as occurred in the present case. The employer is still entitled to an offset under K.S.A. 44-501(h), but as computed in the present case the rational approach is to apportion the retirement benefits over the remaining life expectancy of the claimant.
Affirmed.