(180 P.3d 597)
No. 97,502

HAROLD STANLEY ROBINSON, *Appellant/Cross-appellee,* v. SOUTHWESTERN BELL TELEPHONE, CO. *Appellee/Cross-appellant.*

343

Opinion filed April 4, 2008.

*Roger A. Riedmiller,* of Law Office of Roger A. Riedmiller, of Wichita, for appellant/cross-appellee.

*Anton C. Anderson* and *Douglas M. Greenwald,* of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for appellee/cross-appellant.

Before CAPLINGER, P.J., MALONE, J. and LARSON, S.J.

CAPLINGER, J.: Harold Stanley Robinson appeals his workers compensation award, claiming the Workers Compensation Board (Board) erred in applying the retirement benefits offset of K.S.A. 44-501(h) to his lump sum retirement benefit. Robinson also claims the Board erred in applying the offset before he had received his entire functional impairment award. Southwestern Bell Telephone Company and its insurance carrier, Helmsman Management Services, Inc. (collectively SBT), cross-appeal, contending the Board erred in calculating Robinson's retirement benefits offset based upon the amount of the lump sum payment he received, rather than the periodic payment Robinson could have received had he elected to receive monthly payments.

We affirm the Board's application of the retirement benefits offset to Robinson's lump sum payment based upon our finding that K.S.A. 44-501(h) requires the inclusion of *all* employer-funded retirement benefits when calculating the retirement benefits offset, including but not limited to lump sum and periodic retirement payments. Further, we affirm the Board's application of the retirement benefits offset at the commencement of Robinson's permanent partial disability payments and reject Robinson's suggestion that this application lowered his award below his percentage of functional impairment.

Finally, because we find a reasoned and rational basis exists to support the methodology used by the Board to calculate the retirement benefits offset, we reject SBT's cross-appeal.

*Factual and procedural background*

Robinson sustained a personal injury arising out of and in the course of his employment with SBT and was placed on long term disability on July 10, 1998. Approximately 1 year later, on July 18, 1999, Robinson retired. As part of his retirement package, Robinson was permitted to choose either a lump sum payment of $196,060.46 or a lifetime monthly payment of $1,240.55. Robinson chose the lump sum payment and rolled the payment into an individual retirement account (IRA).

The administrative law judge (ALJ) determined Robinson suffered a 34% whole body functional impairment and a 66.5% work disability. The ALJ calculated the retirement benefits offset required under K.S.A. 44-501(h) by dividing the amount of Robinson's lump sum retirement benefit ($196,060.46) by his projected life expectancy at the time he received the benefit in July 1999 (1,279.2 weeks), which resulted in a retirement benefits offset in the amount of $153.27 per week. However, the ALJ applied the offset only after Robinson received 52.29 weeks of temporary total disability at the unreduced rate of $366 per week ($19,138.14) followed by 128.42 weeks of permanent partial disability at the unreduced rate of $366 per week ($47,001.72). Robinson then received 139.75 weeks of permanent partial disability at the reduced

rate of $212.73 per week ($29,729.02) for a total award of $95,868.88.

The Board affirmed the ALJ's calculation of the retirement benefits offset but concluded the offset should be applied immediately to Robinson's permanent partial disability upon his retirement. Consequently, the Board awarded Robinson 52.29 weeks of temporary total disability at the maximum rate of $366 per week ($19,138.14) plus 251.18 weeks of permanent partial disability at the reduced rate of $212.73 per week ($53,433.52) for a total award of $72,571.66. One Board member dissented, disagreeing with the Board's application of 44-501(h) to the lump sum retirement benefit. Both Robinson and SBT timely appeal the Board's decision.

*Application of the Retirement Benefits Offset of K.S.A. 44-501(h) to Claimant's Lump Sum Retirement Payment*

Robinson first argues that the offset provision of K.S.A. 44-501(h) does not apply to his lump sum retirement benefits distribution because he received the distribution all at once, and thus he is no longer "receiving" retirement benefits as contemplated by the statute. SBT argues Robinson's interpretation of the statute is too narrow and, further, that his interpretation would lead to unreasonable results.

K.S.A. 44-501(h) states:

"If the employee *is receiving* retirement benefits under the federal social security act or retirement benefits from any other retirement system, program or plan which is provided by the employer against which the claim is being made, any compensation benefit payments which the employee is eligible to receive under the workers compensation act for such claim shall be reduced by the weekly equivalent amount of the total amount of all such retirement benefits, less any portion of any such retirement benefit, other than retirement benefits under the federal social security act, that is attributable to payments or contributions made by the employee, but in no event shall the workers compensation benefit be less than the workers compensation benefit payable for the employee's percentage of functional impairment." (Emphasis added.)

The interpretation of statutory provisions in the Workers Compensation Act is a question of law. Under the doctrine of operative construction, we give judicial deference to the Board's interpretation of the Workers Compensation Act and we generally uphold

the Board's interpretation where a rational basis exists for its decision. However, the Board's determination on questions of law is not conclusive and, though persuasive, is not binding on this court. Robinson, as the party challenging the Board's interpretation, bears the burden of proving its invalidity. See *Foos v. Terminix*, 277 Kan. 687, 693, 89 P.3d 546 (2004); *Winnebago Tribe of Nebraska v. Kline*, 283 Kan. 64, 70, 150 P.3d 892 (2007).

"The fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. The legislature is presumed to have expressed its intent through the language of the statutory scheme. Ordinary words are given their ordinary meanings. When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be." *Kline*, 283 Kan. at 77.

As a general rule, we construe statutes to avoid unreasonable results and we presume the legislature does not intend to enact useless or meaningless legislation. *Hawley v. Kansas Dept. of Agriculture*, 281 Kan. 603, 631, 132 P.3d 870 (2006).

Initially, we note that although the issue now before us also was raised in the brief filed by the claimant in *Lleras v. Via Christi Regional Med. Center*, 37 Kan. App. 2d 580, 581-85, 154 P.3d 1130 (2007), we declined to address the issue in that case as it was not raised by the claimant/appellee through a cross-appeal. *Lleras* does address, however, the calculation of a lump sum retirement benefits offset under K.S.A. 44-510(h), and therefore we will address *Lleras* in our discussion of SBT's cross-appeal, later in this opinion.

Relying upon *J.G. Masonry, Inc. v. Department of Revenue*, 235 Kan. 497, 680 P.2d 291 (1984), Robinson contends 44-501(h) is a penal statute and, consequently, should be construed in his favor. In *J.G. Masonry*, our Supreme Court examined provisions of the Kansas Retailers' Sales Tax Act, K.S.A. 79-3601 *et seq.*, and determined that because sales tax statutes are penal, they must be strictly construed in favor of the taxpayer. 235 Kan. at 500.

The Retailers' Sales Tax Act, however, contains a penalty and interest provision which "provides for monetary fines or imprisonment, or both, for violating the provisions of the act." *Kansas City Millwright Co., Inc., v. Kalb*, 221 Kan. 658, 663, 562 P.2d 65, *modified by* 221 Kan. 752, 564 P.2d 1280 (1977); see K.S.A. 2007

Supp. 79-3615. Because K.S.A. 44-501(h) contains no similar penalty provision, it is not a penal statute and the general rules of statutory interpretation apply.

Robinson next argues that even giving deference to the Board's interpretation of the statute, we must reject that interpretation because lump sum retirement benefits do not fall within the plain language of K.S.A. 44-501(h), which applies "[i]f the employee *is receiving* retirement benefits . . . from any other retirement system." (Emphasis added.) Robinson notes that while he "received" retirement benefits when his lump sum retirement benefits were distributed, he no longer "is receiving" retirement benefits.

SBT argues Robinson's interpretation of K.S.A. 44-501(h) is unduly restrictive. SBT urges us to read the statute's reference to "receiving" benefits in conjunction with the "weekly equivalent" provision, which provides that "[workers compensation] shall be reduced by the *weekly equivalent amount of the total amount of all such benefits.*" (Emphasis added.)

We agree that K.S.A. 44-501(h) contemplates that regardless of the timing of the payment of retirement benefits, the retirement benefit offset must be calculated using the *total* of all such benefits and converting those benefits to a "weekly equivalent amount."

Further, even if we were to agree with Robinson's restrictive interpretation of the phrase "is receiving retirement benefits," we would nevertheless find, as SBT suggests, that this literal interpretation would lead to unreasonable results.

In this regard, we derive guidance from *Foulk v. Colonial Terrace*, 20 Kan. App. 2d 277, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995). Much like the claimant in this case, Foulk urged the court to adopt a literal definition of the workers compensation statute at issue there. Specifically, Foulk argued the presumption found in K.S.A. 1988 Supp. 44-510e(a) that a worker has no work disability if the worker "engages in any work" for comparable wages, does not apply to cases where the worker possesses the ability to engage in such work but chooses not to do so. 20 Kan. App. 2d at 283. We rejected the employee's literal interpretation of the statute, noting:

"Construing K.S.A. 1988 Supp. 44-510e(a) to allow a worker to avoid the presumption of no work disability by virtue of the worker's refusal to engage in work at a comparable wage would be unreasonable where the proffered job is within the worker's ability and the worker has refused to even attempt the job. The legislature clearly intended for a worker not to receive compensation where the worker was still capable of earning nearly the same wage. Further, it would be unreasonable for this court to conclude that the legislature intended to encourage workers to merely sit at home, refuse to work, and take advantage of the workers compensation system. To construe K.S.A. 1988 Supp. 44-510e(a) as claimant suggests would be to reward workers for their refusal to accept a position within their capabilities at a comparable wage." 20 Kan. App. 2d at 284.

Similarly, in this case, a literal interpretation of K.S.A. 44-501(h) would lead to unreasonable results and run afoul of the legislative intent to "prevent duplication of wage loss replacement." *Injured Workers of Kansas v. Franklin,* 262 Kan. 840, 872, 942 P.2d 591 (1997). In *Franklin,* our Supreme Court discussed the legislative intent behind the retirement benefits offset:

"[T]he legislature allowed employer contributions in private pension plans, paid to retired injured workers, to offset employer-funded workers compensation benefits paid to the same injured workers, so as to prevent duplication of wage loss replacement. This is a public policy issue. The legislature believes such an offset will encourage employers to furnish retirement plans for employees because the employer will not be required to duplicate wage replacement should an injured worker retire." 262 Kan. at 872.

Thus, the legislature's clear intent in enacting K.S.A. 44-501(h) was to provide incentives for employers to fund retirement benefits for workers, knowing that if a worker is injured and retires, no duplicate wage replacement will occur. This purpose would be frustrated were we to adopt the narrow interpretation proposed by Robinson.

Robinson nevertheless suggests that excluding lump sum distributions from the statute's application is reasonable because the statute does not provide guidance as to the manner in which to convert a lump sum payment to a weekly equivalent amount. Thus, Robinson would have us infer that the statute was not intended to include such payments. Robinson fails to note, however, that K.S.A. 44-501(h) also fails to specify the manner in which a periodic payment is to be converted to a weekly equivalent amount. More-

over, it bears noting that many of the issues incurred in converting a lump sum payment may also arise when converting a periodic payment, including (1) whether to use the gross or net payment; (2) whether to consider survivors benefit arrangements; and (3) whether to take into account the interest earned on retirement benefits.

Thus, while the legislature has not provided guidance as to the manner in which the offset applies to lump sum payments, it similarly has provided no guidance for applying the offset to periodic payments.

In conclusion, we agree with SBT that to interpret the statute to apply only to periodic payments would lead to unreasonable results—results the legislature did not intend when enacting K.S.A. 44-501(h). Further, we conclude the language of the statute referring to the reduction of benefits by the "weekly equivalent amount of the total amount of all such retirement benefits" clearly contemplates inclusion of *all* employer-funded retirement benefits in calculating the offset, including but not limited to lump sum and periodic payments. Therefore, we affirm the Board's application of the offset to Robinson's lump sum retirement benefit.

### Timing of application of retirement benefits offset

Relying upon the last sentence of K.S.A. 44-501(h), which provides that "in no event shall the workers compensation benefit be less than the workers compensation benefit payable for the employee's percentage of functional impairment," Robinson contends in the alternative that the Board erred in concluding the offset should apply at the commencement of permanent partial disability payments.

Robinson suggests the timing of the application resulted in a reduction of his benefit below the amount to which he was entitled for his percentage of functional impairment pursuant to K.S.A. 44-501(h). Robinson asserts that the Board should have adopted the finding of the ALJ, whereby he would have received 128.42 weeks of permanent partial disability at the unreduced rate of $366 per week to compensate him fully for his functional impairment. Thereafter, under the ALJ's ruling, he would receive 139.75 weeks

of permanent partial disability at the rate reduced by the retirement benefits offset, or $212.73 per week.

SBT argues the last sentence of K.S.A. 44-501(h) places "a floor beneath which total permanent disability benefits cannot fall below," but does not guarantee, as Robinson suggests, that a claimant must receive the maximum weekly compensation without offset until the maximum functional impairment award is reached. SBT points out that not only does the Board's finding satisfy this "floor," or minimum amount, but over the course of the payment of such benefits Robinson actually will receive benefits totaling in excess of the amount the functional impairment award would have been without the offset.

To support its argument, SBT sets out in its brief calculations showing that the statutory minimum award of permanent partial disability based upon Robinson's functional impairment without the offset would be $47,002.32, while the Board awarded a total of $53,433.52 after applying the offset. Robinson does not dispute these calculations.

Thus, we conclude that the Board's application of the retirement benefits offset at the commencement of Robinson's permanent partial disability payments did not lower Robinson's award below his percentage of functional impairment in violation of K.S.A. 44-501(h).

*Cross-Appeal: Calculation of amount of retirement benefits offset*

In its cross-appeal of the Board's decision, SBT challenges the Board's calculation of the offset amount, arguing the Board erred in basing the award on Robinson's lump sum payment divided by his life expectancy from the date of the award. SBT argues the Board should have used the amount Robinson "could have received" as a monthly payment ($1,240.55) to calculate the retirement benefits offset, which would have resulted in a larger offset.

Robinson counters that the method of calculation utilized by the ALJ and adopted by the Board is rational, efficient, predictable, and provides finality to the judgment.

Because this issue involves statutory interpretation, our review is unlimited. See *Foster v. Kansas Dept. of Revenue*, 281 Kan. 368,

374, 130 P.3d 560 (2006). As noted earlier, however, our review is subject to the doctrine of operative construction, which provides that the interpretation of a statute by an administrative agency charged with responsibility for enforcement of the statute is entitled to judicial deference. See *Lleras*, 37 Kan. App. 2d at 582 (applying the doctrine of operative construction when addressing whether the Board erred in calculating the offset under K.S.A. 44-501[h]).

As further noted, K.S.A. 44-510(h) does not provide for a particular method of calculating the amount of the retirement benefits offset. In this case, the ALJ calculated the offset amount by dividing the lump sum payment by Robinson's life expectancy at the time of his retirement, which the ALJ derived from the mortality table in PIK Civ. 3d 171.45.

Significantly, in *Lleras*, as in this case, the claimant received a lump sum retirement benefit and the Board calculated the K.S.A. 44-501(h) retirement benefits offset in the same manner it calculated the offset in this case. The employer argued the Board erred in apportioning the lump sum over the employee's life expectancy rather than using the maximum number of weeks of disability benefits. 37 Kan. App. 2d at 585-86, 587. We affirmed the Board's ruling, concluding that because the employee's lump sum retirement benefit was intended to apply for the remainder of his life expectancy, the Board's use of the mortality table was proper. 37 Kan. App. 2d at 587.

While the employer in *Lleras* challenged the time period for the offset and not the use of the lump sum, the court's rationale is instructive:

"K.S.A. 44-501(h) does not state that the employee's work disability is reduced simply by the weekly benefit of the employee's retirement benefits. Rather, the statute expressly states the work disability benefit is 'reduced by the *weekly equivalent amount* of the total amount of all such retirement benefits.' The Board properly concluded that even though Lleras received a lump sum payout of his retirement benefits, the lump sum does not prevent the Board from determining what the 'weekly equivalent amount' of the retirement benefits would have been. Lleras' retirement benefits were intended to apply for the remainder of his lifetime and the Board's determination of his life expectancy in computing the 'weekly equivalent amount' was proper. Lleras' retirement, even if done early, does not

end simply because he chose to receive his benefits in a one-time lump sum payout. The Board properly used the mortality table from the Pattern Instructions Kansas Civ. 3d 171.45 in arriving at the offset amount." 37 Kan. App. 2d at 587.

SBT attempts to distinguish *Lleras* by suggesting that the claimant there, unlike Robinson, did not choose between a lump sum payment or a monthly periodic payment. Several references in the opinion, however, indicate otherwise: "Lleras retirement, even if done early, does not end simply because he chose to receive his benefits in a one-time lump sum payout." 37 Kan. App. 2d at 587; "Lleras freely chose to have his retirement benefits paid out in one lump sum to obtain the present value of his retirement." 37 Kan. App. 2d at 585.

Moreover, even if the claimant in *Lleras* had no choice regarding the manner of payment of his benefits, this lack of choice did not appear to play any part in the court's determination that the Board's method of calculation was rational.

SBT also points out that the court in *Lleras* did not discuss the employee's investment choices and that the claimant in *Lleras* paid taxes on his lump sum immediately, whereas Robinson did not. Again, these factual distinctions, even if valid, provide insufficient basis to distinguish *Lleras* as they did not impact the court's determination that the methodology employed by the Board was rational.

In calculating the "weekly equivalent amount" of Robinson's retirement benefits, the Board utilized the actual amount of the lump sum benefit received and divided that amount by Robinson's life expectancy. This method appears quite consistent with the statute's direction to reduce the work disability benefit by the "weekly equivalent amount of the total amount of all such retirement benefits."

Because a rational basis exists to support the methodology used by the Board to calculate the offset, we reject SBT's cross-appeal.

Affirmed.