(977 P.2d 283)

No. 79,848

ALAN J. GREEN, *Appellee*, v. CITY OF WICHITA, *Appellant*.

Opinion filed March 26, 1999.

*Edward D. Heath, Jr.*, of Wichita, and *Gary E. Rebenstorf*, city attorney, of Wichita, for appellant.

*Gregory D. Bell*, of Reynolds, Forker, Berkley, Suter & Rose, of Hutchinson, for appellee.

Before BRAZIL, C.J., ELLIOTT, J., and WAHL, S.J.

BRAZIL, C.J.: The City of Wichita (City) appeals from an award in a workers compensation claim.

The City argues that Alan Green's workers compensation benefits should be reduced by the amount of benefits he receives from his retirement pension and that Green voluntarily removed himself from the labor market.

We affirm.

In November 1993, Green, a 40-year-old firefighter, injured his back moving some emergency rescue equipment. In February 1994, he reinjured his back and underwent surgery for a herniated disc. He returned to work in August 1994 for light duty subject to work restrictions. Upon returning to work, he was instructed by his immediate supervisor to fill out his retirement papers. Green had two separate retirement plans, one, an age-based retirement plan, and the other, a service-related disability benefit plan.

Green also filed an application for a workers compensation hearing. The administrative law judge (ALJ) entered an award finding Green suffered an 89 percent permanent partial general body work disability. The judge offset the award by the amount of Green's benefits under the City's retirement plan. Both the City and Green timely applied for review of this order. The Workers Compensation Board (Board) affirmed the ALJ's award, but held the City was not entitled to offset Green's benefits under the retirement plan. The City timely appeals to this court.

## 1. K.S.A. 44-501(h)

The Board determined that the benefits Green receives through the City's retirement system are not in the nature of retirement benefits and are therefore not subject to statutory offset.

K.S.A. 44-501(h) states:

"*If the employee is receiving retirement benefits* under the federal social security act or retirement benefits *from any other retirement system, program or plan which is provided by the employer* against which the claim is being made, *any compensation benefit payments which the employee is eligible to receive under the workers compensation act for such claim shall be reduced by the weekly equivalent amount of the total amount of all such retirement benefits,* less any portion of any such retirement benefit, other than retirement benefits under the federal

social security act, that is attributable to payments or contributions made by the employee, but in no event shall the workers compensation benefit be less than the workers compensation benefit payable for the employee's percentage of functional impairment." (Emphasis added.)

Interpretation of workers compensation statutes involves a question of law, over which this court exercises unlimited review. *Helms v. Pendergast*, 21 Kan. App. 2d 303, 307, 899 P.2d 501 (1995). The intent of the legislature governs the construction of a statute, if that intent can be ascertained. 21 Kan. App. 2d at 307. In ascertaining legislative intent, this court may consider the language of the statute, the historical background of the enactment, the purpose to be accomplished, and the effect the statute may have under various suggested constructions. 21 Kan. App. 2d at 307.

Our Supreme Court discussed the legislative intent underlying K.S.A. 44-501(h) in *Injured Workers of Kansas v. Franklin*, 262 Kan. 840, 872, 942 P.2d 591 (1997):

"We hold the legislature intended to prevent duplication of wage loss replacement with the offset provision. The legislature concluded that it did not make sense to prevent duplication of replacement wages from social security benefits that were partially employer funded and not prevent such duplication of wages from employer-funded private pensions. . . . The legislature believes such an offset will encourage employers to furnish retirement plans for employees because the employer will not be required to duplicate wage replacement should an injured worker retire. The prevention of wage loss duplication is a legitimate state goal . . . ."

The City argues that Green's benefits are paid pursuant to the City "Retirement System" and that the plain language of the statute and the benefit entitlement program requires an offset. Green contends, and the Board agreed, that the benefits he is receiving are in the nature of disability benefits and are not "retirement" benefits. Neither the statute nor *Injured Workers* specifically mentions disability benefits.

If Green's benefits are not retirement benefits, then there is no statutory authority for the offset. The statute does not define retirement benefits, and there is no case law distinguishing retirement from disability benefits.

The Board noted the disability and retirement benefits overlap. The same employer and employee contribution funded both the disability and the age-based retirement benefits. The amount of benefits under both is based on essentially the same calculation of 75 percent of final salary. The Board then held:

"The Appeals Board nevertheless concludes the benefits paid claimant should not be treated as retirement benefits for purposes of K.S.A. 44-501(h). The Board's conclusion is based on what it considers the commonly accepted meaning of the term 'retirement benefit.' The Board construes 'retirement benefit' as a benefit paid by reason of age and/or years of service. Retirement benefits are not dependent on disability. In this case claimant is eligible only because of his injury and disability. In contrast, eligibility for retirement is based only on age and/or years of service."

Black's Law Dictionary defines "retire" as "[t]o terminate employment or service upon reaching retirement age." Black's Law Dictionary 1183 (5th ed. 1979). Retirement plans usually specify "as a vital requirement" a minimum period of service. 60A Am. Jur. 2d, Pensions and Retirement Funds § 1643, p. 969. For example, the "retirement system" for firefighters mandated by K.S.A. 1998 Supp. 14-10a08 sets a minimum service period of 22 years and a minimum retirement age of 50. The corresponding disability benefits section, K.S.A. 14-10a09, sets no age or length-of-service minimum.

The benefit plan provided by the City is entitled "Wichita Police & Fire Retirement System." One section is identified as "Service Retirement" and provides for 75 percent of the worker's final average salary upon completion of 20 years of service and reaching the age of 50. A second section, under which Green was receiving benefits, is identified as "Service Connected Disability." It provides for 75 percent of the salary in effect on the date when the salary ceased if the worker is permanently injured or disabled. This benefit is available for "[a]ny age, regardless of length of service." In the introduction to the City's plan, the purpose of the retirement system is set out as "not only to provide an orderly means whereby employees may *retire because of age and length of service,* but also to provide *disability benefits.*" (Emphasis added.) The City's plan

thus distinguishes between retirement benefits and the disability benefits Green is receiving.

Although the City's overall benefits scheme is denoted a "retirement system," the section on which Green relies is not a traditional retirement plan. It contains no age or years-of-service requirement; it requires only current employment and a work-related disability. It is distinguished within the authorizing document from the retirement plan. It therefore fails to meet the definition of retirement benefits for the purposes of the statutory offset provision.

The result is that Green receives workers compensation benefits and a significant separate disability benefit; he may, in fact, have a higher income after the injury than before. His double benefits run counter to the legislative intent expressed in *Injured Workers*, 262 Kan. at 872. Nevertheless, the legislature has not specifically taken away a worker's ability to receive private disability benefits in addition to workers compensation, and it does not appear to have taken away dual public-employment disability compensation and workers compensation. On the contrary, the legislature has mandated benefit packages for firefighters without any cross-reference between that mandate and the workers compensation statute. See K.S.A. 14-10a01 *et seq.*

This court will favor substance over form. See *Reiter v. City of Beloit*, 263 Kan. 74, 95, 947 P.2d 425 (1997). The substance of Green's benefits from the City was in the nature of disability assistance, not a retirement package. The Board correctly ruled that there is no basis for an offset of benefits.

### 2. Wage Loss

The City contends on appeal that both the ALJ and the Board incorrectly found that Green did not voluntarily remove himself from the labor market. This constitutes a factual finding. On reviewing factual questions resolved by the Board, this court will affirm the factfinder's determinations if substantial competent evidence supports those determinations. *Copeland v. Johnson Group, Inc.*, 24 Kan. App. 2d 306, 317, 944 P.2d 179 (1997).

There is evidence in the record that Green's cessation of labor was not voluntary. Green testified he had not planned on leaving

the fire department for a number of years, but he was specifically ordered to do so. He further testified he had applied for several jobs but was rejected because of his back condition. He also testified he is making preparations to embark on a new career, either as a ranch manager or as a helicopter pilot.

In *Copeland,* 24 Kan. App. 2d at 320, the court established a two-part rule regarding cessation of employment. The factfinder initially must determine whether the claimant has made a good faith effort to find appropriate employment. If such a finding is made, the factfinder determines the difference between pre- and post-injury wages. If it is determined the worker failed to make a good faith effort to find appropriate employment, the factfinder must determine an appropriate post-injury wage based on all the evidence before it. 24 Kan. App. 2d at 320.

This test was based in part on the holding in *Foulk v. Colonial Terrace*, 20 Kan. App. 2d 277, 284, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995), where this court held:

"The legislature clearly intended for a worker not to receive compensation where the worker was still capable of earning nearly the same wage. Further, it would be unreasonable for this court to conclude that the legislature intended to encourage workers to merely sit at home, refuse to work, and take advantage of the workers compensation system."

There is evidence in the record that Green is not merely sitting at home, refusing to work, and taking advantage of the workers compensation system. The factfinders reasonably could have found Green has made a good faith effort to find employment commensurate with his disability.

Affirmed.