RAYMOND J. WISHON, *Appellee*, v. GARY L. COSSMAN, *et al.*, and
HELENA CHEMICAL COMPANY, *Appellants*.

81,341

RAYMOND J. WISHON, *Appellant*, v. HELENA CHEMICAL
COMPANY AND RELIANCE INSURANCE COMPANY, *Appellees*.

(991 P.2d 415)

Opinion filed November 5, 1999.

*Jerry M. Ward*, of Ward Law Office of Great Bend, argued the cause, and was
on the briefs for appellants Helena Chemical Company and Reliance Insurance
Company.

*Mark E. McFarland*, of Doering, Grisell & McFarland, P.A., of Garden City,
argued the cause and was on the brief for appellee Raymond J. Wishon.

The opinion of the court was delivered by

SIX, J.: This is a workers compensation statutory construction case. We review two consolidated cases with separate but related issues. The first case, an appeal from the district court, involves the extent of an employers subrogation lien under K.S.A. 44-504(b). The second concerns a K.S.A. 1998 Supp. 44-501(h) social security offset imposed by the Workers Compensation Board (Board).

Helena Chemical Company is the employer. Reliance Insurance Company is the workers compensation carrier (collectively "Helena"). Helena is the appellant on the K.S.A. 44-504(b) subrogation issue and appellee on the K.S.A. 1998 Supp. 44-501(h) offset issue. The district court held that Helena was subrogated only to $16,890.98 of a $150,000 judgment obtained by Raymond J. Wishon, the injured worker, against the third-party tortfeasor in a negligence action. With respect to the K.S.A. 1998 Supp. 44-501(h) offset case, the Board reduced Wishon's workers compensation award by the amount of social security benefits he is receiving. Wishon appeals.

Our jurisdiction is under K.S.A. 20-3018(c) (a transfer on our motion).

The two consolidated issues are: (1) whether the district court erred in determining that only the amount of the judgment which was duplicative of workers compensation payments was subject to Helena's K.S.A. 44-504(b) subrogation lien; and (2) whether the Board erred in reducing Wishon's award by the amount of social security benefits he is receiving.

Finding no error, we affirm.

## FACTS

Wishon was injured in a motor vehicle accident on May 18, 1994, in the course of his employment. Although Wishon worked part-time until March 2, 1995, he continued to receive his full salary of $986.42 per week, for a total of $40,729.28. Helena also paid Wishon's salary from March 3, 1995 to September 1, 1995, a total of $25,646.92, even though Wishon was on disability leave. Helena also paid $16,890.98 in medical benefits.

Wishon sued Gary Cossman, the driver of the tractor-trailer that hit his pick-up truck, and Cossman's employer and its insurance carrier for injuries arising from the accident. Helena filed a K.S.A. 44-504(b) notice of lien. We find no suggestion in the record that Helena exercised its K.S.A. 44-504 statutory right to intervene in the tort case to protect its lien. Wishon's lost wages claim commenced on September 1, 1995. He did not present evidence of any lost wages for the period before September 1, 1995.

Helena argued that, although Wishon's workers compensation claim had not gone to an award, it was entitled to collect $55,461.67 as a K.S.A. 44-504(b) lien. ($16,890.98 in medical benefits and $38,570.59 in salary paid to Wishon.) Wishon contested the amount claimed by Helena. He argued that Helena's claim was essentially for wages paid to him from May 18, 1994, to September 1, 1995, rather than workers compensation benefits. He also asserted that he did not attempt to recover lost wages from the accident until September 1, 1995; thus, subrogation against his judgment was limited to $16,890.98 in medical expenses paid.

### The District Court Opinion

The district court agreed with Wishon, saying:

"Helena Chemical Company and Reliance Insurance Company have paid to Plaintiff the amount of $38,570.69 for compensation from May 18, 1994 to September 1, 1995. The amounts recovered in this matter are for the period of time from and after September 1, 1995, and, therefore, pursuant to K.S.A. 44-504(b) and the Kansas Supreme Court's decision in McGranahan v. McGough, 249 Kan. 328, 334, 820 P.2d 403 (1991), the amounts recovered herein do not duplicate the compensation paid to Plaintiff by Helena Chemical Company and/or Reliance Insurance Company. Accordingly, Helena Chemical Company and Reliance Insurance Company are not entitled to a lien against Plaintiff's recovery herein for this amount."

## DISCUSSION

The disagreement between the parties is not the existence but the extent of Helena's subrogation lien. Wishon has never disputed that Helena has provided $16.890.98 medical aid and that a subrogation lien exists to that amount. The specific issue is the extent of Helena's subrogation lien for the remaining $38,570.69 paid to Wishon.

Resolution of the subrogation issue involves our interpretation of K.S.A. 44-504(b). The interpretation of a statute is a question of law. Our review is unlimited. *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 879, 953 P.2d 1027 (1998). In interpreting a statute, the fundamental rule is that the intent of the legislature governs, where it can be ascertained. *Legislative Coordinating Council v. Stanley*, 264 Kan. 690, 702, 957 P.2d 379 (1998). The legislature intends the Workers Compensation Act to be liberally construed "for the purpose of bringing employers and employees within the provisions of the act to provide the protections of the . . . act to both." K.S.A. 44-501(g). Where a statute is plain and unambiguous, we must give effect to the intention of the legislature as expressed, rather than determine what the law should be. *In re Marriage of Killman*, 264 Kan. 33, 42-43, 955 P.2d 1228 (1998). However, where the face of the statute leaves its construction uncertain, we are not limited to a mere consideration of the language used. We may consider historical background, the circumstances attending passage, the purpose, and the effect under the various considerations suggested. See *Adams v. St. Francis Regional Med. Center*, 264 Kan. 144, 156, 955 P.2d 1169 (1998).

K.S.A. 44-504(b) provides, in part, that if an injured worker subject to workers compensation recovers against a third party for the injury,

"the employer shall be subrogated to the extent of the compensation and medical aid provided by the employer to the date of such recovery and shall have a lien therefor against the entire amount of such recovery, excluding any recovery, or portion thereof, determined by a court to be loss of consortium or loss of services to a spouse. The employer shall receive notice of the action, have a right to intervene and may participate in the action. The district court shall determine the extent of participation of the intervenor, including the apportionment of costs and fees."

The problem here is that Wishon did not attempt to recover against the tortfeasor for lost wages from the date of the accident until September 1, 1995. In fact Wishon contests Helena's claim, asserting the payments were "essentially wages."

We are unable to learn from the record the exact nature of Helena's pre-September 1, 1995, payments to Wishon. The district

court found that Helena paid Wishon $38,570.69 "for compensation" from May 18, 1994, to September 1, 1995. The nature of Helena's pre-September 1, 1995 payments is clouded by the Board's finding, in the second case, that the wages paid from June 3, 1994 to March 1, 1995 were *earned* and, thus, not compensation under K.S.A. 44-504(b). Wishon contends his tort recovery did not include any compensation paid by Helena. The question is whether K.S.A. 44-504(b) grants a lien (a) on the recovery or (b) only to the extent the recovery duplicates the compensation and medical aid paid by the employer. The district court adopted the latter view. We agree.

The district court's decision was based on its interpretation of *McGranahan v. McGough*, 249 Kan. 328, 820 P.2d 403 (1991). McGranahan received $12,616.29 in compensation benefits for injuries sustained in an on-the-job vehicle accident. He resolved his negligence action against the tortfeasor by a settlement reduced to judgment. Under the settlement, McGranahan received $10,000. Of that amount, $6,000 was for pain and suffering, $3,000 for his wife's loss of consortium, and $1,000 for future medical expenses. McGranahan did not attempt to collect his lost wages or medical expenses in the settlement. 249 Kan. at 330-32. The *McGranahan* employer and its insurance carrier intervened in the negligence action under K.S.A. 44-504(b). The intervenors objected to approval of the stipulation and confession of judgment. They pointed out that although McGranahan had received over $9,000 in lost wages, the stipulation provided no recovery for lost wages. 249 Kan. at 332.

The question in *McGranahan* was whether the stipulated judgment was subject to the employer's lien. We looked at the purpose behind K.S.A. 1990 Supp. 44-504(b), which then read, in part:

"In the event of recovery from such other person by the injured worker or the dependents or personal representatives of the deceased worker by judgment, settlement or otherwise, the employer shall be subrogated to the extent of the compensation and medical aid provided by the employer to the date of such recovery and shall have a lien therefor against *such recovery* and the employer may intervene in any action to protect and enforce such lien." (Emphasis added.)

We said that the purpose of the subrogation right under K.S.A. 1990 Supp. 44-504(b) is to prevent double recovery by the em-

ployee. We decided that McGranahan's judgment for pain and suffering was subject to subrogation because pain and suffering is an integral part of the calculation of disability. However, we found that the loss of consortium award was not duplicative of payments made by the employer and, thus, not subject to subrogation.

Our focus in *McGranahan* was on the character of the damage itemizations in the settlement. We were not asked to determine whether an employer would be subrogated to amounts that, in character, are items of damage that employers compensate employees for under the Workers Compensation Act, but which the employee has not actually recovered from the tortfeasor. The central holding of *McGranahan* is that subrogation is not allowed where the award does not duplicate the compensation and medical aid provided by the employer. 249 Kan. at 334.

*McGranahan* was decided in 1991. In 1993, the legislature made sweeping changes to the Workers Compensation Act. K.S.A. 44-504(b) was amended. L. 1993, ch. 286, § 26. In place of the language at issue in *McGranahan* stating that the employer "shall have a lien therefor against such recovery", the new K.S.A. 44-504(b) says that the employer "shall have a lien therefor against *the entire amount of* such recovery, *excluding any recovery, or portion thereof, determined by a court to be loss of consortium or loss of services to a spouse. The employer shall receive notice of the action, have a right to intervene and may participate in the action. The district court shall determine the extent of participation of the intervenor, including the apportionment of costs and fees.*" L. 1993, ch. 286, § 26. (Emphasis indicates amended language. The pre-1993 version also granted the employer the right to intervene to protect and enforce the lien.)

Apparently the 1993 legislature codified *McGranahan*. The lien is to be against the "entire amount" of the recovery, excluding any recovery for loss of consortium or loss of services to a spouse.

K.S.A. 44-504(b), at the time of *McGranahan*, granted a statutory lien "against such recovery." The current version of K.S.A. 44-504(b) grants a statutory lien "against the entire amount of such recovery." Is the "entire amount" of a recovery different in any way from "the recovery"? The amount of Wishon's "recovery" is

$150,000. The "entire amount" of his recovery is also $150,000. The additional phrase "entire amount" is not instructive. Thus, Helena's argument that the addition of the phrase "entire amount" supports its position is not persuasive.

Helena relies primarily on a comparison of K.S.A. 44-504(b) and K.S.A. 40-3113a of the Kansas Automobile Injury Reparations Act (KAIRA). K.S.A. 40-3113a(b) says in part: "[T]he insurer or self-insurer shall be subrogated to the extent of duplicative personal injury protection benefits provided to date of such recovery and shall have a lien therefor against such recovery." Helena argues that if the legislature had intended that an employer's subrogation lien not extend to non-duplicative payments, it could have said so in K.S.A. 44-504(b) as it did with loss of consortium or loss of services. Helena's statutory construction argument, although plausible, overlooks situations such as the one that may have occurred here.

The nature of Wishon's pre-September 1, 1995, payments from Helena was contested. In Wishon's appeal on the K.S.A. 44-501(h) issue, the Board found that for part of the pre-September 1, 1995, period, Helena paid Wishon earned wages, not workers compensation benefits. Earned wages are not subject to a K.S.A. 44-504(b) subrogation lien. The parties agree Wishon was paid his full salary to September 1, 1995.

Helena contends that if we affirm the district court, claimants will either craft settlements or go to a jury requesting only damages sustained after the last receipt of workers compensation benefits. We believe the legislature provided a means to prevent circumvention of the operation of K.S.A. 44-504(b) by mandating notice, authorizing intervention, and providing for district court supervision. If the employer is apprehensive about the strength of its lien, it may intervene to protect it.

The intent of K.S.A. 44-504(b) is twofold: (1) to preserve injured workers claims against third-party tortfeasors and (2) to prevent double recoveries by injured workers. *Lemery v. Buffalo Airways, Inc.,* 14 Kan. App. 2d 301, 307-08, 789 P.2d 1176, *rev. denied* 246 Kan. 767 (1990). K.S.A. 44-504(b) grants employers subrogation liens on tort recoveries by injured workers only to the extent that a worker's recovery duplicates compensation and medical expenses

paid by the employer under the Workers Compensation Act. On the record before us, we find no double recovery and affirm the district court. The 1993 amendment to K.S.A. 44-504(b) did not alter *McGranahan's* emphasis on preventing double recovery. 249 Kan. at 334.

## Wishon's Appeal from the Board's Decision

On August 1, 1995, Wishon began receiving social security disability payments. Wishon's social security disability payments were converted on March 1, 1996, to social security retirement payments under 42 U.S.C. § 402(a)(3)(A) (1994) because Wishon reached age 65.

Helena argued, among other things, that Wishon's workers compensation benefit should be reduced by his social security benefits. The Assistant Director of Workers Compensation disagreed. Helena appealed to the Board. The Board modified Wishon's award, finding that the social security benefits were "retirement" benefits. Helena was entitled to a reduction of the award by the amount of those benefits. Wishon contends that the Board erred in determining that his compensation award should be offset by the amount of social security retirement benefits he is receiving. Wishon argues that, in so finding, the Board misinterpreted K.S.A. 1998 Supp. 44-501(h). We disagree.

K.S.A. 1998 Supp. 44-501(h) provides:

"If the employee is receiving retirement benefits under the federal social security act or retirement benefits from any other retirement system, program or plan which is provided by the employer against which the claim is being made, any compensation benefit payments which the employee is eligible to receive under the workers compensation act for such claim shall be reduced by the weekly equivalent amount of the total amount of all such retirement benefits, less any portion of any such retirement benefit, other than retirement benefits under the federal social security act, that is attributable to payments or contributions made by the employee, but in no event shall the workers compensation benefit be less than the workers compensation benefit payable for the employee's percentage of functional impairment."

A compensation award will be reduced by the amount of the social security benefits (unless the reduced award is less than the compensation benefit payable for the employee's percentage of func-

tional impairment, in which case the employee gets that benefit). The purpose of this reduction is to prevent wage-loss duplication. See *Dickens v. Pizza Co.*, 266 Kan. 1066, 1070-71, 974 P.2d 601 (1999); *Injured Workers of Kansas v. Franklin*, 262 Kan. 840, 870, 942 P.2d 591 (1997).

Wishon argues that we should apply the rationale and result of *Dickens* here. Dickens was receiving retirement benefits. He delivered pizzas to supplement those benefits and was injured. He suffered a second wage loss. His compensation award was to replace the second wage loss and was not a duplication of the retirement benefits he was already receiving. 266 Kan. at 1071. Wishon contends that he receives social security retirement benefits because he was receiving disability benefits when he turned 65. He reasons that he is receiving benefits solely because of his disability, not because he chose to retire. Wishon draws a distinction between workers who voluntarily retire and those who are forced to retire because of disability. He argues the latter should be able to retain their benefits without offset. In support of this contention, he cites *Brown v. Goodyear Tire & Rubber Co.*, 3 Kan. App. 2d 648, 599 P.2d 1031 (1979), *aff'd* 227 Kan. 645, 608 P.2d 1356 (1980). We disagree.

Wishon seizes on a comment in *Brown* that "[a] worker could retain workmen's compensation benefits by staying in the labor market and not retiring." 3 Kan. App. 2d at 654. He argues that this language from *Brown* clearly establishes that injured workers who are forced to retire should be treated differently than those who choose to do so. Wishon's emphasis takes the language out of context. The point of the quote is that a worker who retires, whether forced to or not, is no longer suffering wage loss because of injury, but because of retirement, for which he or she receives benefits. The quote does not support Wishon's argument. In fact, *Brown* runs contrary to the argument, in that the employee in *Brown* was unable to work because of his disability, but his benefits were reduced.

Wishon also cites *Green v. City of Wichita*, 26 Kan. App. 2d 53, 977 P.2d 283 (1999). In *Green*, the question was whether an employee's disability payments from a city-based retirement system

constituted "retirement payments" under K.S.A. 44-501(h) and were thus subject to offset. *Green* held they were not. *Green* defined "retirement payments" as benefits paid because of age or length of service. The disability benefits paid to Green were because of his injury, not because of his age or length of service. 26 Kan. App. 2d at 55-57. Wishon asserts he also received benefits because of his disability that were then converted into retirement benefits; thus, his benefits are due to his disability rather than his age or length of service.

Wishon's situation is not similar to Green's. Green was not near retirement age. He was receiving payments from a city retirement system, which, although designated as a retirement system, also paid disability benefits. Green's benefits were due to disability rather than age or length of service. Wishon was receiving payments based on his disability. However, at age 65, those payments changed to retirement payments because of his age. Wishon's retirement benefits are based on his age rather than his disability.

The purpose of the K.S.A. 1998 Supp. 44-501(h) offset provision is to prevent wage-loss duplication. *Dickens*, 266 Kan. at 1071. Wishon's benefits are subject to the K.S.A. 44-501(h) offset provision. He is receiving social security retirement benefits. Therefore, the plain language of K.S.A. 44-501(h) requires that his workers compensation award be reduced by his social security payments.

Where an injured worker is receiving a workers compensation award and also social security disability payments which are converted to social security retirement benefits because the recipient reaches age 65, the workers compensation award is subject to the K.S.A. 44-501(h) offset provision.

Wishon's frustration is understandable. Before reaching age 65, he received not only his workers compensation benefits, but also social security benefits because of his disability. Kansas has not made workers compensation benefits subject to offset by social security disability payments, as have other states. See, *e.g.* Minn. Stat. §176.101 Subd. 4 (1998) (reducing permanent total disability payments by the amount of any federal social security disability payments, retirement payments, or survivor benefits payable be-

cause of the same injury). Wishon received both benefits without an offset until he reached age 65. At age 65, his social security disability benefits became retirement benefits, subject to the K.S.A. 1998 Supp. 44-501(h) offset provision. As a result, his monthly income was considerably reduced.

Wishon's final argument is that applying the offset here contravenes the purpose of workers compensation. He bases this argument on language in *Boyd v. Barton Transfer & Storage,* 2 Kan. App. 2d 425, 580 P.2d 1366, *rev. denied* 225 Kan. 843 (1978). *Boyd* adopted a statement from *Baker v. List and Clark Construction Co.,* 222 Kan. 127, 563 P.2d 431 (1977). *Baker* in turn quoted 4A Larson, The Law of Workmen's Compensation 97.00 and 97.10 (1976), for the following proposition:

" ' "Wage-loss legislation is designed to restore to the worker a portion, such as one-half to two-thirds, of wages lost due to the three major causes of wage-loss: physical disability, economic unemployment, and old age." ' " 2 Kan. App. 2d at 427.

Wishon pulls the *Boyd* statement out of context to support a bright-line policy that workers must receive one-half to two-thirds of their wages in any wage loss legislation. Wishon's argument is without merit. The language used by Larson does not establish policy, but instead simply comments on the general purpose of wage-loss regulation. Kansas has not subscribed to the proposition that wage-loss regulation must replace one-half to two-thirds of a claimant's income. Wishon's forum for such a policy change is the legislature.

Affirmed.