No. 127,031

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JUSTIN RUMBAUGH,
*Appellant*,

v.

DIRECTV and AMERICAN ZURICH INSURANCE COMPANY,
*Appellees*.

SYLLABUS BY THE COURT

Pursuant to K.S.A. 44-504(b), an employer obtains a subrogation lien on an employee's third-party recovery only to the extent that the employee's recovery duplicates an award paid or owed by the employer under the Workers Compensation Act.

Appeal from Workers Compensation Board. Submitted without oral argument. Opinion filed January 17, 2025. Affirmed in part, reversed in part, and remanded with directions.

*Bruce Alan Brumley* and *Chloe Elizabeth Davis*, of Brumley Law Offices, of Topeka, for appellant.

*Andrew T. Jones*, of Wiedner & McAuliffe, Ltd., of Overland Park, for appellees.

Before HURST, P.J., ISHERWOOD and PICKERING, JJ.

HURST, J.: After suffering a back injury at work in 2014, Justin Rumbaugh received treatment through his employer's workers compensation insurer in accordance with the Workers Compensation Act. In 2016, about eight months after Rumbaugh was released to return to work and two years after his original work injury, Rumbaugh presented to an emergency department with symptoms of cauda equina syndrome.

1

Unfortunately, he was not immediately diagnosed and later brought a third-party medical malpractice action alleging he suffered permanent, continuing urological conditions from the delayed diagnosis.

In 2018, Rumbaugh reached a settlement with his employer, DirecTV, and its workers compensation insurer, American Zurich Insurance Company (collectively Respondents), related to outstanding claims for his 2014 work injury, but that settlement excluded claims for future medical benefits. Then, in 2020, Rumbaugh also settled a third-party medical negligence claim related to damages for his delayed cauda equina syndrome diagnoses. After several communication attempts, to which Respondents did not reply, Rumbaugh sent Respondents a check and letter explaining that the check was intended to resolve any subrogation amount owed to Respondents.

Rumbaugh later filed a post-award application for workers compensation benefits related to his 2014 back injury, but the Workers Compensation Board (the Board) found that Respondents held a subrogation lien against Rumbaugh's entire third-party medical malpractice settlement award and that Rumbaugh must use it first to satisfy all future medical bills. The Board also found that Rumbaugh failed to establish his accord and satisfaction claim. Rumbaugh appeals, claiming that K.S.A. 44-504(b) of the Workers Compensation Act grants Respondents a subrogation lien only on duplicative damage awards—and his third-party medical negligence award was not duplicative—and the Board erred when it refused to address his accord and satisfaction claim.

The Board erred by granting Respondents a lien against Rumbaugh's entire third-party medical malpractice settlement award without determining whether the medical malpractice award constitutes duplicative recovery for Rumbaugh's workers compensation award. However, Rumbaugh failed to show that the Board erred when it found his accord and satisfaction claim untimely. Accordingly, the Board's decision that Respondents hold a subrogation lien against Rumbaugh's entire third-party medical

2

malpractice award is reversed and remanded for further consideration consistent with this opinion.

FACTUAL AND PROCEDURAL BACKGROUND

On April 30, 2014, Rumbaugh suffered a back injury while at work which was treated through his employer's workers compensation insurer. In October 2014, Rumbaugh underwent a left L3-L4 and left L4-L5 hemilaminectomy and microdiscectomy surgical procedure to repair his injured back. Dr. Daniel Zimmerman released Rumbaugh from treatment in February 2016 after finding Rumbaugh's condition was stable and had reached maximum medical improvement. Even so, Dr. Zimmerman believed that Rumbaugh would likely need additional medical treatment and identified work restrictions for him to return to work.

In April 2016, Rumbaugh started working for the United States Postal Service but had to cease that work shortly thereafter due to his lower back pain. On October 2, 2016, Rumbaugh went to the emergency room of the Geary County Community Hospital with urinary retention complaints. The doctor who evaluated Rumbaugh attributed his complaints to prostate medication issues—not his back injury or spinal issues. Rumbaugh had a history of disc herniations and was exhibiting symptoms of cauda equina syndrome but was not diagnosed at that time. Cauda equina syndrome is swelling around the nerve roots in the spinal column and is an urgent or emergency condition requiring immediate treatment.

A few days later, on October 5, 2016, Rumbaugh went back to the emergency room with continuing urinary retention and bilateral leg weakness. Rumbaugh was diagnosed with cauda equina syndrome and referred to a neurosurgeon. Rumbaugh underwent a decompression surgery to address the cauda equina syndrome the next day, but the surgery did not restore his bladder or bowel control.

3

Dr. Theodore Koreckij examined Rumbaugh on November 18, 2016, and diagnosed him with cauda equina syndrome, secondary to disc reherniation at L3-L4 status post decompression with persistent neurologic sequela, neurogenic bowel, neurogenic bladder, and L3 pars fracture with instability. Dr. Koreckij believed that Rumbaugh's condition was related to his original workers compensation injury in April 2014. Dr. Koreckij recommended a L3-L5 fusion, repeat CT and MRI scans, and continued physical therapy. He opined that Rumbaugh was at maximum medical improvement for the cauda equina syndrome.

*Workers Compensation and Third-Party Medical Malpractice Settlements*

On April 17, 2018, Rumbaugh settled his back injury workers compensation claim with Respondents. According to the workers compensation settlement agreement, Rumbaugh received $72,500 as a "strict compromise" of all issues except future medical treatment. The workers compensation settlement resolved all issues related to indemnity, including future temporary total disability, work disability, vocational rehabilitation, and right to review and modification. Respondents reserved the right to obtain and fund a Medicare Set-Aside trust approved by the Centers for Medicare and Medicaid Services (CMS) for Rumbaugh's future medical care. See K.S.A. 44-510h; K.S.A. 44-510k. During the workers compensation settlement hearing, the administrative law judge (ALJ) explained to Rumbaugh that "your future medical is being left open, and you just must make sure you get prior approval."

Rumbaugh later filed a medical negligence claim where he alleged that he suffered damages from a negligent delay in diagnoses and treatment for his cauda equina syndrome on October 2, 2016. Rumbaugh did not contend the negligence caused his need for cauda equina surgery but claimed the negligence delayed the timing of his treatment, which caused him urological problems.

4

In March 2020, Rumbaugh's medical malpractice attorney reached out to Respondents' counsel to involve them and protect their subrogation lien interest under K.S.A. 44-504. According to Rumbaugh's attorney, Respondents' counsel failed to respond to multiple phone calls and emails about the medical malpractice mediation. Rumbaugh attended mediation and reached a tentative settlement of his medical malpractice claims without Respondents' involvement or input.

On April 6, 2020, Rumbaugh's medical malpractice counsel sent a letter to Respondents' counsel stating Rumbaugh's position about Respondents' subrogation amount after deducting attorney fees and expenses, which stated:

> "We went through the itemization [of medical bills paid] you provided to determine which bills were related to Mr. Rumbaugh's urological problems. As you will see from the attached itemization, those bills total $59,796.53. In addition, I have attached a lost wage itemization that shows $9,216.90 in benefits paid. Together, these amounts total $69,013.43 in past benefits paid. As mentioned above, our attorney fees and expenses represent 46.20% of the total settlement. Reducing for attorney fees and expenses, we show **Gallagher Bassett's claimed lien should be $37,129.23** [$69,013.43 – ($69,013.43 * 46.20%)].
> "If you are in agreement with the same, **please forward me a letter showing payment for $37,123.23 [sic] will satisfy your subrogation interests**. Should you have any questions or concerns, please do not hesitate to contact me. Thank you in advance."

On April 14, 2020, Rumbaugh formally settled his third-party medical malpractice claims. According to Rumbaugh's counsel, the medical malpractice settlement related only to Rumbaugh's urological symptoms from the delay in proper diagnosis and treatment of his cauda equina syndrome. The attorney testified that he did not believe the "settlement encompassed treatment related to [Rumbaugh's] back pain." The confidential settlement was approved by the Sedgwick County District Court and required Rumbaugh

5

to satisfy any valid subrogation interest through Rumbaugh's workers compensation carrier.

On April 27, 2020, after several attempts to contact Respondents about the subrogation lien under K.S.A. 44-504(b) without a response, Rumbaugh's counsel sent a certified letter with a check asking that Respondents accept the check for $37,129.23 in full accord and satisfaction of any subrogation lien. The letter included with the check stated:

> "Pursuant to in my April 2, 2020, email, I have enclosed a check for $37,129.23 in relation to your client, American Zurich Insurance Company's, subrogation interests. This check is meant to serve as a full accord and satisfaction as to any subrogation interests, future setoffs/credits, and/or lien interests American Zurich Insurance Company and/or Gallagher Bassett have or claim to have in Mr. Rumbaugh's third-party liability settlement. Should you have any questions or concerns, please do not hesitate to contact me. If I have not heard from you otherwise, I will presume this matter is closed."

American Zurich Insurance Company cashed the check, but neither Respondents nor their counsel contacted Rumbaugh's medical malpractice counsel.

*First Application for Post-Award Benefits*

Rumbaugh filed a series of applications for post-award modifications of medical benefits and applications for a preliminary hearing to the Board. On November 24, 2021, in response to Rumbaugh's first post-award application, the ALJ denied payment of Rumbaugh's medical bills because he failed to introduce the bills into evidence, provide foundation for the bills, and establish that the bills arose from authorized medical treatment. In addition, the ALJ ruled that Rumbaugh established an accord and satisfaction as to the past bills but that "[t]he same cannot be said as to DirecTV's right to future set-offs." The ALJ found that although Respondents were responsible for

6

Rumbaugh's ongoing medical care related to his back injury, Rumbaugh had to first exhaust his third-party medical malpractice settlement award to treat his urological conditions.

Rumbaugh appealed the following issues to the Board:

"1. Is the respondent responsible for paying the claimant's medical bills based on the current record?
"2. Did the respondent waive the K.S.A. 44-504 subrogation credit due to accord and satisfaction?
"3. Should the respondent remain responsible for ongoing medical care related to claimant's back, without regard to a K.S.A.44-504 subrogation credit?"

In a January 28, 2022 order, the Board affirmed the ALJ's determination that Rumbaugh failed to meet his burden of proof for payment of the submitted medical bills. The Board further found it was premature for the ALJ to rule that medical bills associated with Rumbaugh's back should not be subject to subrogation, but medical bills associated with Rumbaugh's urological issues should be Rumbaugh's responsibility until the subrogation credit was exhausted. Finally, the Board also determined it was premature to rule on accord and satisfaction until the nature of the medical bills was established. Rumbaugh did not appeal this order.

*Additional Medical Evaluations*

At the request of Rumbaugh's attorney, Dr. Zimmerman examined Rumbaugh for a second time on March 30, 2022, and documented that Rumbaugh presented with complaints related to residual effects of cauda equina syndrome, including daily use of a Foley catheter and bowel incontinence. Dr. Zimmerman concluded that Rumbaugh had the immediate onset of a neurogenic bladder, neurogenic bowel, and severe lower extremity weakness and that even after treatment continued to have cauda equina

7

syndrome symptoms. Dr. Zimmerman found the need for neurogenic bladder treatment resulted from cauda equina syndrome—and the reported delay in the operative treatment would have no impact on the need for the procedure performed. Dr. Zimmerman testified that he believed Rumbaugh's urinary symptoms were caused by cauda equina syndrome from the original work-related injury and not the alleged delay in cauda equina syndrome treatment. According to Dr. Zimmerman, Rumbaugh continues to need treatment for the complications of cauda equina syndrome.

At the request of Rumbaugh's attorney, Dr. William Hopkins examined Rumbaugh on November 4, 2022, and found the direct and prevailing factor for the cauda equina lower back pain, loss of lower extremity strength and sensation, and impairment was the original work accident on April 30, 2014. Dr. Hopkins explained in his report that the alleged delay in treatment aggravated the cauda equina symptoms and may have contributed to making them worse:

> "There is question as to whether or not the possible malpractice contributed to [Rumbaugh's] need for medical treatment specifically the urological complications. I do not believe it was the prevailing factor of his current conditions. However, it may have caused a worsening. The cauda equina syndrome pre-existed any malpractice and is directly related to the work accident of April 24 [sic], 2014. The prevailing factor for Mr. Rumbaugh's current condition and treatment related to cauda equina condition is the work accident and resulting injury and complications from that injury. The malpractice is not the prevailing factor of these conditions as they are directly caused by the work accident injury."

*Second Application for Post-Award Medical Benefits*

On December 29, 2022, Rumbaugh filed a second application for post-award benefits which is the subject of this appeal. In that application, Rumbaugh sought treatment for his back injury and to "get all medical outstanding paid." The issues

8

mirrored the issues in Rumbaugh's previous application for post-award benefits. Rumbaugh introduced expert witness testimony as to his need for additional medical care and evidence about the cause of the cauda equina syndrome. That said, Rumbaugh failed to put medical bills into evidence or lay a foundation for his medical bills.

At Respondents' request, Dr. David Ebelke examined Rumbaugh on January 25, 2023. Dr. Ebelke found the 2014 work accident may have been the precipitating and prevailing factor for the development of the two disc herniations related to Rumbaugh's original back surgery. In contrast to the other doctors, Dr. Ebelke concluded the original work accident did not cause or contribute to Rumbaugh developing cauda equina syndrome. He opined that Rumbaugh's superimposed soft tissue disc extrusion caused the cauda equina syndrome and that the original work accident did not cause the extrusion or need for the second surgery in October 2016. Dr. Ebelke suggested that Rumbaugh's obesity and genetic factors were more significant factors for his recurrent disk herniation and stenosis, which led to the cauda equina syndrome. Dr. Ebelke found that rapid decompression was the best treatment to minimize permanent dysfunction from cauda equina syndrome and thus Rumbaugh's ongoing urological problems are "far more likely related to the delay in diagnosis" and not his original work accident.

At the March 9, 2023 Board hearing, Rumbaugh sought payment of his outstanding medical bills and future medical treatment from Respondents. Although there were no witnesses, the administrative record included several deposition transcripts, stipulations, reports, and workers compensation records. Respondents did not dispute Rumbaugh's need for additional medical treatment but argued it should be paid from Rumbaugh's third-party medical negligence settlement.

The ALJ found Rumbaugh's cauda equina syndrome was the "natural and probable consequence of the underlying work injury," but he also found the emergency room physician's "failure to timely diagnose and treat the cauda equina syndrome likely made

9

the symptoms worse and irreversible." The ALJ concluded that Respondents maintained a subrogation lien against Rumbaugh's entire third-party medical malpractice settlement award and were not required to pay any medical benefits until Rumbaugh exhausted that entire award.

The ALJ noted that Rumbaugh failed to present medical bills for the six-month period prescribed by K.S.A. 44-510k(b) or lay foundation for any. Similar to what the Board previously decided, the ALJ did not reach the issue of accord and satisfaction, finding it premature because Rumbaugh failed to meet his burden of proof by putting the bills into evidence or establishing the foundation for those bills.

Rumbaugh timely appealed to the Board for review. The only issue was framed as: "Is [Rumbaugh's] ongoing and future medical treatment to be paid from the proceeds of the settlement from the medical malpractice lawsuit in accordance with K.S.A. 44-504 or be authorized medical treatment paid for by Respondent in accordance with the settlement of the workers compensation claim?" On November 8, 2023, the Board affirmed the ALJ's decision and found that Rumbaugh must pay his ongoing medical bills from the proceeds from this third-party medical malpractice settlement. The Board explained:

> "According to the plain language of K.S.A. 44-504, Claimant's medical care shall be paid from the proceeds of the medical malpractice settlement until exhausted.
> "The ALJ's decision is affirmed in full. Respondent's subrogation lien against the entire amount the third-party settlement is intact and Respondent is excused from paying medical bills until the entirety of the third-party settlement proceeds, after deduction for attorney fees and expenses is exhausted. No medical bills are ordered paid by Respondent, as no bills have been placed in evidence, no foundation has been established for any claimed medical bills, and the Board's jurisdiction is limited to the six months preceding the filing of the application for post-award medical treatment. The Board does

10

not reach the issue of accord and satisfaction, as the medical bills, and foundation for those bills have not been placed in evidence."

Rumbaugh timely petitioned for judicial review to this court.

DISCUSSION

Rumbaugh claims the Board erred in interpreting and applying the Workers Compensation Act (the Act) and by not addressing his accord and satisfaction claim. First, Rumbaugh argues the Board erred in finding that Respondents have a subrogation lien against Rumbaugh's entire third-party medical malpractice settlement award because it does not provide duplicative damages of his workers compensation award. Second, Rumbaugh claims that Respondents waived their subrogation claim under the Act because they accepted payment in full accord and satisfaction under K.S.A. 84-3-311. Generally, the Board's final order under the Act is appealable to this court in accordance with the Kansas Judicial Review Act (KJRA). K.S.A. 44-556(a); K.S.A. 77-601 et seq. Pursuant to the KJRA, this court may grant relief if it finds the Board "has erroneously interpreted or applied the law." K.S.A. 77-621(c)(4).

I.    THE BOARD ERRED IN FINDING THAT RESPONDENTS HAVE A SUBROGATION LIEN AGAINST ALL OF RUMBAUGH'S THIRD-PARTY MEDICAL MALPRACTICE SETTLEMENT AWARD.

The Board found that under K.S.A. 44-504(b), Respondents have a subrogation lien credit against Rumbaugh's third-party medical malpractice settlement award for all compensable workers compensation medical treatments. The Board concluded that Respondents are not required to pay Rumbaugh's outstanding or ongoing medical bills until he exhausts the entire medical malpractice settlement award on his medical care. Rumbaugh counters that his third-party medical malpractice award compensates him for

11

damages unrelated to his workers compensation award and thus cannot be used to set off medical treatments from his workers compensation claim.

This court exercises unlimited review to interpret the Act to address Rumbaugh's claims. *Hawkins v. Southwest Kansas Co-op Service*, 313 Kan. 100, 107, 484 P.3d 236 (2021); see also *Higgins v. Abilene Machine, Inc.*, 288 Kan. 359, 361, 204 P.3d 1156 (2009) (explaining that courts interpreting the Act do not owe deference to the ALJ or Board's interpretation or decision). The most fundamental rule of statutory interpretation "is that the intent of the legislature governs if that intent can be ascertained." *Stewart Title of the Midwest v. Reece & Nichols Realtors*, 294 Kan. 553, 557, 276 P.3d 188 (2012). That review begins with the "plain language of the statute," and when that language is unambiguous this court "refrain[s] from reading something into the statute that is not readily found in its words." *In re M.M.*, 312 Kan. 872, 874, 482 P.3d 583 (2021). This court liberally construes the Act to bring "employers and employees within the provisions of the act." K.S.A. 44-501b(a).

An employer who is responsible for an employee's compensable injury has a duty to provide "the services of a healthcare provider and such medical, surgical and hospital treatment . . . as may be reasonably necessary to cure and relieve the employee from the effects of the injury." K.S.A. 44-510h(a). Depending on the injury, an employer's obligation to make workers compensation payments may be ongoing. See K.S.A. 44-510h(e) (an employer's obligation to provide medical services ends when the employee reaches maximum medical improvement unless "it is more probably true than not that additional medical treatment will be necessary after such time as the employee reaches maximum medical improvement"); 44-510k(a)(1) (when future medical benefits are awarded an employee may apply for post-award medical benefits).

Here, Respondents and Rumbaugh specifically left future medical payments open, and Respondents reserved the right to fund a CMS-approved Medicare Set-Aside for

future medical care. At the workers compensation settlement conference, Respondents' attorney explained to the court that

> "[w]e are settling . . . as a strict compromise of all issues except medical treatment. Essentially, we are resolving all issues related to indemnity, including but not limited to, past or future TTD [Temporary Total Disability], work disability, vocational rehabilitation, and the right to review and modification. We are leaving open future medical with the employer reserving the right to obtain a CMS-approved Medicare Set-Aside and fund the Medicare Set-Aside and then close future medical."

Respondents anticipated Rumbaugh's need for future medical payments compensable under the Act.

An employee who receives workers compensation benefits may also pursue compensation from third parties who are liable for the employee's medical damages:

> "(a) When the injury or death for which compensation is payable under the workers compensation act was caused under circumstances creating a legal liability against some person other than the employer or any person in the same employ to pay damages, the injured worker or the worker's dependents or personal representatives shall have the right to take compensation under the workers compensation act and pursue a remedy by proper action in a court of competent jurisdiction against such other person." K.S.A. 44-504(a).

When an employee is awarded through judgment, settlement, or otherwise a payment from a third party (not the employer) as contemplated in K.S.A. 44-504(a), the employer is entitled to a subrogation lien against that award:

> "(b) In the event of recovery from such other person by the injured worker or the dependents or personal representatives of a deceased worker by judgment, settlement or otherwise, the employer shall be subrogated to the extent of the compensation and

13

medical aid provided by the employer to the date of such recovery and shall have a lien therefor against the entire amount of such recovery, excluding any recovery, or portion thereof, determined by a court to be loss of consortium or loss of services to a spouse. The employer shall receive notice of the action, have a right to intervene and may participate in the action. The district court shall determine the extent of participation of the intervenor, including the apportionment of costs and fees. Whenever any judgment in any such action, settlement or recovery otherwise is recovered by the injured worker or the worker's dependents or personal representative prior to the completion of compensation or medical aid payments, the amount of such judgment, settlement or recovery otherwise actually paid and recovered which is in excess of the amount of compensation and medical aid paid to the date of recovery of such judgment, settlement or recovery otherwise shall be credited against future payments of the compensation or medical aid." K.S.A. 44-504(b).

In 2018, Rumbaugh pursued a medical malpractice claim against the hospital and several providers for negligence in failing to timely diagnose and treat his cauda equina syndrome in 2016. Rumbaugh claimed that because they delayed his diagnoses, he suffered from ongoing, serious urological problems. Rumbaugh settled that third-party medical malpractice case. According to Rumbaugh's medical malpractice counsel, the settlement award covered only the urological symptoms due to a delay in proper diagnosis and treatment, but not medical treatment related to Rumbaugh's back pain. The Sedgwick County District Court approved the confidential medical malpractice settlement and required Rumbaugh to satisfy any valid subrogation interest with Rumbaugh's workers compensation carrier under K.S.A. 44-504(b). According to Rumbaugh's attorney, the medical malpractice settlement agreement does not itemize or describe the medical damages covered by the settlement.

In interpreting K.S.A. 44-504(b), the Board determined that Respondents had a subrogation lien against Rumbaugh's entire third-party medical malpractice settlement award without determining whether the settlement award duplicated his workers compensation award. In reaching that decision, the Board not only neglected to consider

14

applicable Kansas Supreme Court precedent, but it also failed to consider the Act's statutory language regarding subrogation liens. K.S.A. 44-504(b); see also *Wishon v. Cossman*, 268 Kan. 99, 105-06, 991 P.2d 415 (1999) (explaining that subrogation under K.S.A. 44-504[b] applies to duplicative damages).

The Kansas Supreme Court has explained that the Act's subrogation and lien provision is intended to (1) preserve injured workers' claims against third-party tortfeasors; and (2) prevent double recoveries by injured workers. *Hawkins,* 313 Kan. at 108-09. The court has also explained that the statute "grants employers subrogation liens on tort recoveries by injured workers *only to the extent that a worker's recovery duplicates compensation and medical expenses paid by the employer under the Workers Compensation Act*." (Emphasis added). *Wishon*, 268 Kan. at 105-06. As a panel of this court explained when a claimant settled a third-party case, the employer had a lien for all the *duplicative benefits* the employer had paid. *Ballard v. Dondlinger & Sons Const. Co*., 51 Kan. App. 2d 855, 867-68, 355 P.3d 707 (2015); see also *Henson v. Davis*, 54 Kan. App. 2d 668, 402 P.3d 1161 (2015).

Contrary to Respondents' argument, the holding from *Wishon* that "the purpose of the subrogation right under [K.S.A. 44-504(b)] is to prevent double recovery by the employee" does not read something into the statute that is not present. 268 Kan. at 103. The applicable statutory language contemplates that the employer receives a subrogation lien only on payments to the employee for which "*compensation is payable under the workers compensation act*"—and not on future settlements the employee may receive for an unrelated injury. (Emphasis added.) K.S.A. 44-504(a). When interpreting a statute, this court must consider its provisions *in pari materia*, "to reconcile and bring those provisions into workable harmony, if possible." *Roe v. Phillips County Hospital*, 317 Kan. 1, Syl. ¶ 3, 522 P.3d 277 (2023). When possible, this court must give effect to the entire Act and read the provisions "so as to make them consistent, harmonious, and sensible." *State v. Bee*, 288 Kan. 733, Syl. ¶ 4, 207 P.3d 244 (2009). Moreover, this court

15

"must construe a statute to avoid unreasonable or absurd results." *State v. Eckert*, 317 Kan. 21, Syl. ¶ 8, 522 P.3d 796 (2023).

Subsection (a) of K.S.A. 44-504 provides that when the employee's injury "for which compensation is payable *under the workers compensation act*" was caused in part by someone other than the employer, the employee who received a workers compensation award has the right to also "pursue a remedy . . . against *such other person*" who may be liable for the injuries. (Emphases added.) K.S.A. 44-504(a). Subsection (b) provides that "[i]n the event of recovery from *such other person* by the injured worker" then "the employer shall be subrogated to the extent of compensation and medical aid provided by the employer to the date of such recovery and shall have a lien therefor against the entire amount of *such recovery* . . . ." (Emphases added.) K.S.A. 44-504(b). The clear and unambiguous statutory language provides that the subrogation lien in subsection (b) is limited to the extent of a recovery from a third party under subsection (a). Additionally, the third-party recovery in subsection (a) is for damages for medical claims for which the employee has also received a workers compensation award.

Not only is this result clear from the language, but it is also logical. When an employee receives an award for injuries unrelated to their workers compensation award, the employer has no subrogation rights as to that third-party award simply because the employee had a previous, unrelated workers compensation award. The Act grants the employer a subrogation lien—and the term subrogation has a specific, legal meaning that cannot simply be ignored. As the *Henson* panel explained, subrogation commonly means "'substitution of one person for another'" and central to subrogation is that "the party secondarily responsible—but relied upon to make the initial payment—gets reimbursed when the primarily responsible party pays." 54 Kan. App. 2d at 675. However, that reimbursement is "*only to the extent that it has contributed to the primary party's payment*." 54 Kan. App. 2d at 675; see Restatement (First) of Security § 141 (1941). An essential element of subrogation is avoiding two parties paying for the *same injury*. An

16

employer's obligation for workers compensation benefits cannot be reduced by amounts the employee receives for other, unrelated injuries or conditions. Such a result would be absurd, contrary to the statutory language, ignore the purpose of subrogation, and may discourage an employee from seeking third-party recoveries.

Rumbaugh argues that his medical negligence settlement award was not intended to cover future medical treatment for his original back injury or, in fact, any future medical treatment. Although the journal entry memorializing the medical negligence settlement did not outline the damages, it does note that Respondents are responsible for some future medical payments. The court explained that

> "[g]iven that worker's compensation is responsible for future medical payments, the Court finds that a Medicare Set Aside (MSA) is not necessary under these circumstances to consider and protect Medicare's future interest, and the parties have reasonably considered Medicare's future interest as a secondary payer in the contest of this compromise liability settlement."

Rumbaugh argues this language "strongly suggests" the medical negligence settlement did not have an allowance for future medical expenses. Rumbaugh's medical negligence counsel also explained that he believed that the medical negligence settlement covered only Rumbaugh's urological symptoms related to the delay in proper diagnosis and treatment and not damages for his back injury.

The Board erred in interpreting K.S.A. 44-504(a) to find that Respondents were entitled to a subrogation lien against Rumbaugh's entire third-party medical malpractice settlement award without determining whether the medical malpractice award covered duplicative damages "for which compensation is payable under the workers compensation act." K.S.A. 44-504(a); K.S.A. 77-621(c)(4) (permitting judicial relief of an agency decision that erroneously interpreted or applied the law). The Board's decision is reversed and remanded. On remand, the Board must determine whether Rumbaugh's

17

medical malpractice settlement includes damages for treatment of Rumbaugh's injury or condition for which he also received a workers compensation award. If it does, the Board must also determine whether, and to what extent, Rumbaugh's medical malpractice award includes damages for future medical expenses. In making these determinations, the Board should consider and apply the Kansas Supreme Court's decision in *Wishon* and the panel's discussion in *Henson*. See *Wishon*, 268 Kan. at 105-06; *Henson*, 54 Kan. App. 2d at 675.

II.      THE BOARD DID NOT ERR IN FINDING RUMBAUGH'S ACCORD AND SATISFACTION
         CLAIM UNTIMELY.

Rumbaugh also asserts that he demonstrated full accord and satisfaction making Respondents' claim not recoverable. Rumbaugh specifically argues that the Board erred by refusing to consider his accord and satisfaction argument as provided in K.S.A. 84-3-311:

> "If a person against whom a claim is asserted proves that (1) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, (2) the amount of the claim was unliquidated or subject to a bona fide dispute, and (3) the claimant obtained payment of the instrument, the following subsections apply." K.S.A. 84-3-311(a).

Contrary to Rumbaugh's argument, the Board did not ignore this issue. Rather, the Board found the issue either premature or lacking in factual support.

The Board affirmed the ALJ's decision and stated that it "does not reach the issue of accord and satisfaction, as the medical bills, and foundation for those bills have not been placed into evidence." The ALJ had found it premature to address the issue of accord and satisfaction until those medical bills were placed in evidence and found it was "precluded from reaching the issue of accord and satisfaction." The ALJ specifically

18

found that "Rumbaugh remains entitled to authorized medical care, but that he has failed to establish his entitled to payment of post-award medical expenses."

The Board did not reject Rumbaugh's accord and satisfaction claim on the merits. Rather, it denied his claim on procedural grounds, finding that Rumbaugh failed to meet his burden of proof by providing the medical bills and a foundation for those bills. Rumbaugh makes no argument to refute this or to suggest that the bills were not necessary to determine the issue. Under the Act, Rumbaugh bears the burden to establish the right to compensation. K.S.A. 44-501b(c); *Woessner v. Labor Max Staffing*, 312 Kan. 36, 42, 471 P.3d 1 (2020). On appeal, Rumbaugh fails to establish or even argue that the Board wrongly determined that it lacked records to address the accord and satisfaction issue. Under these circumstances, Rumbaugh has failed to show the Board erred in ruling that it could not consider his accord and satisfaction argument.

CONCLUSION

The Board erred when it determined that Respondents have a subrogation lien on Rumbaugh's entire third-party medical malpractice settlement award. Pursuant to the Act, Respondents only hold a subrogation lien against Rumbaugh's medical malpractice award to the extent the award covers damages that are also payable under the Act. Accordingly, the Board's decision that Respondents are not responsible for Rumbaugh's current and future medical bills until he has exhausted the third-party medical malpractice award is reversed and remanded for reconsideration consistent with this opinion. On remand, the Board must determine whether and to what extent Rumbaugh's third-party medical malpractice settlement award duplicates his workers compensation award, including whether the proceeds were intended to cover future medical bills. The Board's determination that Rumbaugh's accord and satisfaction claim was untimely is affirmed.

Affirmed in part, reversed in part, and remanded with directions.

19